UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WERNER DECONSTRUCTION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SITEWORKS SERVICES NY, INC., et al.,<br><br>Defendants. | Civil Action No. 15-7682 (MLC)<br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Werner Deconstruction, LLC's ("Werner Deconstruction") motion to amend its Complaint in order to (1) add a veil piercing claim against Defendant Thomas Garbett ("T. Garbett") to hold him personally liable for Defendant Siteworks Services NY, Inc.'s ("Siteworks") obligations; (2) add Yvonne Garbett ("Y. Garbett") and Richard Harle ("Harle") as defendants and assert claims for conversion and unjust enrichment against them; and (3) add a claim for an accounting and the turnover of escrow funds against Y. Garbett. [Docket Entry No. 25]. Siteworks and T. Garbett have opposed Werner Deconstruction's motion to amend on futility grounds. The Court has fully reviewed the arguments made in support of and in opposition to Werner Deconstruction's motion. The Court considers Werner Deconstruction's motion to amend without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Werner Deconstruction's motion to amend is GRANTED in part and DENIED in part.

**I.    Background and Procedural History**

This matter involves Werner Deconstruction's claims against Siteworks and T. Garbett, as well as certain unnamed John Doe Defendants, for (1) breach of contract based on Siteworks' failure to (a) complete its work under the Debris Removal Services Agreement, (b) pay

subcontractors, (c) indemnify Werner Deconstruction for construction lien claims filed by Siteworks' subcontractors, (d) refund pre-payments made by Werner Deconstruction and (e) remove a contaminated tracking pad from the Project; (2) specific performance of contract; (3) quantum meruit; (4) negligence; (5) accounting; (6) fraud; (7) negligent misrepresentation; (8) conversion; and (9) New Jersey Consumer Fraud Act.[1] The Court assumes the parties are familiar with the nature and history of this litigation and will not recite all those details here. Instead, the Court shall focus on the facts most relevant to this motion.

Broadly, this case arises out of the demolition of the Werner Generating Station in South Amboy, New Jersey (the "Project"). Werner Deconstruction began entering into contracts regarding same as early as April 5, 2012 when it entered into an agreement with GenOn REMA LLC ("GenOn") (the "Prime Contract") to demolish Units 1, 2 and 3 at the Werner Generating Station. (Proposed Am. Compl. ¶9; Ex. B to Cert. of Lauren F. Iannaccone; Docket Entry No. 25-2). Anticipating being able to salvage a substantial amount of copper, ferrous and non-ferrous metal under the terms of the Prime Contract, Werner Deconstruction agreed to demolish the three units at its own cost. (*Id*. ¶11). After entering into the Prime Contract with GenOn, in April 2012, Werner Deconstruction entered into a subcontract with BTU Solutions DE, LLC ("BTU DE") (the "Subcontract"). (*Id*. ¶ 12). According to the Subcontract, BTU DE agreed to perform the acts that Werner Deconstruction was responsible to GenOn for under the Prime Contract. (*Id*.)

Pursuant to the terms of the Subcontract, Werner Deconstruction and BTU DE agreed that revenue from the demolition of Units 1, 2 and 3 would be deposited into a Project Account administered by Werner Deconstruction and that all expenses for the Project would be paid from

---
[1] The first seven claims are only asserted against Siteworks. The last two are asserted against Siteworks, Thomas Garbett, an officer of Siteworks, and the John Doe Defendants.

said account. (*Id*. ¶13). They further agreed that after the demolition work was complete, Werner Deconstruction would receive 48% of any money remaining in the Project Account as a net profit distribution. (*Id*. ¶14).

On January 21, 2014, BTU Solutions, LLC ("BTU Solutions"), an entity believed to be a subsidiary of BTU DE, entered into a General Services Agreement (the "General Services Agreement") with Siteworks. (*Id*. ¶15). The General Services Agreement incorporated a Statement of Work ("Statement of Work #01") that called for Siteworks to demolish the building containing Unites 1, 2 and 3 at the Werner Generating Station. (*Id*. ¶16). Pursuant to the General Services Agreement, Siteworks would be compensated with the revenue from the sale of the first $3.5 million worth of scrap material removed from the Project. (*Id*. ¶ 17). However, Statement of Work #01 incorporated into the General Services Agreement included a provision requiring "'a $525,000 hold back of revenues from the sale of scrap to be billed at the completion and acceptance of the work.'" (*Id*. ¶19). According to Statement of Work #01, said revenues were to be held in escrow. (*Id*.) The Statement of Work designated Y. Garbett as the escrow agent for the hold-back funds. (*Id*. ¶20). It also specified the conditions under which the escrow funds could be released to Siteworks. (*Id*. ¶¶ 21-22).

In early 2015, it became apparent to Werner Deconstruction that BTU DE lacked the financial capacity to continue working on the Project. Based on the terms of the Prime Contract with GenOn, Werner Deconstruction was still responsible for completing the remaining demolition work, which included the removal of a large demolition debris pile contaminated with asbestos (the "Demolition Debris Pile"). (*Id*. ¶26).

On February 6, 2015, Werner Deconstruction entered into a Debris Removal Services Agreement, (the "Debris Removal Contract") with Siteworks, according to which Siteworks

3

would use its "'best efforts'" to remove the Demolition Debris Pile within 10 weeks of the effective date of the Debris Removal Contract, *i.e.* February 6, 2015, and would perform the work outlined in the Debris Removal Project "'to completion.'" (*Id*. ¶¶27-28, 32). According to the Debris Removal Contract, Werner Deconstruction would pay Siteworks by wiring payments into a specific account that Siteworks had opened (the "Pre-Payment Account'). (*Id*. ¶33). Based on Article 6 of the Debris Removal Contract, Werner Deconstruction wired an initial $100,000.00 payment to the Pre-Payment Account on February 6, 2015. (*Id*. ¶34). Article 6 of the Debris Removal Contract required Siteworks to use the $100,000.00 payment "'exclusively for prepayment by Contractor to the Landfill, Contractor for loads, and for services as outlined in Exhibit 'A'"" to the Debris Removal Contract. (*Id*. ¶35).

According to the terms of the Debris Removal Contract, between February 13, 2015 and May 26, 2015, Werner Deconstruction wired an additional $2,314,904.96 into the Pre-Payment Account. (*Id*. ¶40). These payments were made based on weekly invoices submitted by Siteworks, which estimated, among other things, the amount of debris to be loaded and transported, and Siteworks' anticipated costs to remove and transport the debris. (*Id*. ¶ 37). As with the initial 100,000.00 payment, the Debris Removal Contract required that these additional payments "'be used by Contractor solely and specifically for Contractor's performance of the Work as set forth in Exhibit 'A' [to the Debris Removal Contract], and for no other purpose.'" (*Id*. ¶36). Werner Deconstruction alleges that Siteworks breached the terms of the Debris Removal Contract by failing to remove the entirety of the Demolition Debris Pile and by abandoning the Project on or about June 29, 2015.

Based on Siteworks alleged breach of the Debris Removal Contract, Werner Deconstruction initiated this litigation, asserting claims against Siteworks, T. Garbett and certain

4

unnamed John Doe Defendants. Werner Deconstruction now seeks to amend its Complaint to (1) add a veil piercing claim against T. Garbett to hold him personally liable for Siteworks obligations; (2) add Y. Garbett and Harle as defendants and assert claims for conversion and unjust enrichment against them; and (3) add a claim for an accounting and the turnover of escrow funds against Y. Garbett.[2]

As noted above, Siteworks and T. Garbett oppose Werner Deconstruction's motion to amend on futility grounds. With respect to the veil piercing claim, they argue that Werner Deconstruction has not plead facts establishing that Siteworks is a sham entity or that it was used to work a fraud or other injustice. Instead, Siteworks and T. Garbett maintain that the facts alleged by Werner Deconstruction, if taken as true, at best, only establish a breach of contract, which is insufficient to hold T. Garbett personally liable. Turning to Werner Deconstruction's proposed accounting, conversion and unjust enrichment claims against Y. Garbett and/or Harle, Siteworks and T. Garbett contend that they are futile because they are improperly based on Siteworks' contract with non-party BTU Solution, a contract to which Werner Deconstruction was not a party. They also argue that the proposed claims are futile because Werner Deconstruction failed to plead jurisdiction over Y. Garbett or Harle.

As to the proposed accounting claim against Y. Garbett, Siteworks and T. Garbett also argue that this claim is futile because Werner Deconstruction failed to allege that Y. Garbett agreed to be the escrow agent or even received any escrow funds. Similarly, they allege that the proposed conversion and unjust enrichment claims against Y. Garbett and Harle fail for another

---

[2] Though not addressed either by Werner Deconstruction in its moving and reply briefs or Siteworks and T. Garbett in their opposition brief, Werner Deconstruction, through its proposed Amended Complaint, also seeks to add fictitious companies, *i.e.*, XYZ Companies 1-10, as defendants in the Amended Complaint. At this juncture, the addition of the fictitious companies is not clearly futile. As such, their addition shall be allowed.

reason: namely Siteowkrs and T. Garbett argue that these claims are barred by the economic loss doctrine. As a result, Siteworks and T. Garbett contend that Werner Deconstruction's motion must be denied in total because all of the proposed amendments are futile.

## II. Analysis

### A. Standard of Review

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Here, the Court focuses on futility as that is the basis for Siteworks and T. Garbett's objections.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6) (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka*, 481 F.3d at 211.

### B. Discussion

The Court first examines Werner Deconstruction's proposed veil piercing claim. As this District has noted:

> In New Jersey and most other jurisdictions, there are two overarching elements required to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."

*The Mall at IV Group Prop.s, LLC v. Roberts*, No. Civ.A. 02-4692 (WHW) 2005 WL 3338369, *3 (D.N.J. Dec. 8, 2005) (quoting William Meade Fletcher et al., *Fletcher Cyclopedia of the Law*

7

*of Private Corporations*, § 41.30 (perm. ed., rev. vol. 1999). The Court considers a number of facts in determining whether the first element has been satisfied. These include:

> gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade of the operations of the dominant stockholder or stockholders.

*Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir. 1988) (applying New Jersey law). With respect to the second element, "there must be some 'wrong' beyond simply a judgment creditor's inability to collect[.]" *Id*. However, a plaintiff "need not prove common law fraud . . ., but rather must meet the less rigid standard of 'fraud, injustice, or the like.'" *Id*. (quoting *Kuibyshevnefteorgsythez v. Model*, civ. A. No. 93-4919, 1995 WL 66371, *15 (D.N.J. Feb. 6, 1995) (citations omitted)). Importantly, "'injustice or the like' will suffice." *Kuibyshevnefteogsynthez*, 1995 WL 66371 at *15 (quoting *Allied Corp. v. Frola*, 701 F.Supp. 1084, 1088-89 (D.N.J. 1988)). The "over-arching principle [of veil piercing] is to prevent fraud, illegality or injustice through the illegitimate use of the corporate form." *Id*. at *13.

Here, Werner Deconstruction points to a myriad of transactions Siteworks made from the Pre-Payment Account and three other accounts (Account Numbers XXXXXX3942, XXXXXX9651 and XXXXXX9718) to establish that T. Garbett used Siteworks as his alter ego and abused the corporate form to siphon money from Siteworks for his own personal benefit. Indeed, it alleges:

> ¶ 141. Upon information and belief, Defendant T. Garbett is the President of SSNY and, therefore, is responsible for every aspect of SSNY's operations as aforesaid.

¶ 142. Between February 6, 2015 and May 26, 2015, Werner Deconstruction entrusted SSNY with $2,414,904.96 via wire transfer into the Pre-Payment Account that had been designated by SSNY.

¶ 143. Before Werner Deconstruction made its first wire transfer to the Pre-Payment Account on February 6, 2015, that account had a balance of $7,081.95.

¶ 144. In addition to the Pre-Payment Account, Defendant T. Garbett controlled at least 3 other checking accounts with T.D. Bank N.A. that identified "Siteworks Service Corp." as the account holder, to wit: XXXXX8340 (i.e., the Pre-Payment Account), XXXXXX3942, XXXXXX9651, and XXXXX9718. On February 6, 2015, those three accounts had a collective balance of $849,931.0l.

¶ 145. Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10 misused SSNY to accomplish unlawful purposes, including, without limitation, absconding with Werner Deconstruction's money.

¶ 146. Among other things, SSNY failed to pay Minerva Enterprises $240,704.97 and failed to pay Ani & Joe Abatement $19,008.00. SSNY failed to pay Minerva Enterprises and Ani & Joe Abatement even though Werner Deconstruction had entrusted SSNY with $2,414,904.96 to be used solely for the removal of the Demolition Debris Pile and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 had a collective balance of $849,931.01 as of February 6, 2015.

¶ 147. Between February 6, 2015 and June 30, 2015, Defendant T. Garbett advanced his own personal interests by withdrawing $1,331,404.00 in cash from the Pre-Payment Account.

¶ 148. Statements from T.D. Bank N.A. reveal a myriad of transactions from the Pre- Payment Account that had no legitimate connection to the removal of Demolition Debris Pile from the Werner Generating Station. Examples of improper transactions from the Pre-Payment Account where Defendant T. Garbett advanced his own personal interests include but are not limited to:

- A debit card purchase at PC Richard & Son on February 9, 2015 in the amount of $2,642.86;

- A debit card purchase for "City of Newark Tax" on February 23, 2015 in the amount of $1,509.18;

- A debit card purchase from the "New York State DMV" on April 28, 2015 in the amount of $4,871.25;

- A debit card purchase from "WPY Affinity Health Plan" on May 4, 2015 in the amount of $1,213.56; and

- Miscellaneous debit card purchases between February 2015 and June 2015 at "Lowes," "The River Palm Terrace," "The Rhodes North Tavern," "Advance Auto Parts," "The Orange Top Diner," "Massage Envy," "Auto Zone," "McDonalds," "Dunkin Donuts," "Apple Store," "Warwick Car Wash," "Somerset Tire Service," "Restaurant Depot," "The Home Depot."

¶ 149.   Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10 failed to observe the corporate form of SSNY as a regular and distinct entity, failed to observe corporate formalities, commingled and transferred funds of the company, and failed to hold the company out as a separate entity in terms of its business operations from their own personal interests.

¶ 150.   By way of example, on February 6, 2015 and February 13, 2015, Werner Deconstruction wired $100,000.00 and $314,904.96 to the Pre-Payment Account. On February 6, 2015 and February 13, 2015, $100,000.00 and $110,000.00 was transferred to Account No. XXXXX9718 by, upon information and belief, Defendant T. Garbett. On February 13, 2015 and February 17, 2015, Defendant T. Garbett advanced his personal interests by withdrawing $400,000.00 in cash from the Pre-Payment Account and Account No. XXXXX9718.

¶ 151.   In addition to the $1.3 million in cash that was withdrawn from the Pre-Payment Account, Defendant T. Garbett advanced his personal interests by withdrawing approximately $1.8 million in cash from Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 between February 2015 and August 2015.

¶ 152.   Statements from T.D. Bank N.A. for Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 reveal a myriad of transactions that had no legitimate business purpose. Examples of improper transactions which advanced the personal interests of Defendant T. Garbett include but are not limited to:

- A check written on February 11, 2015 in the amount of $9,995.68 made payable to "NYS Child Support Processing Center"

- A debit levy of $57,145 on July 21, 2015 for child support;

- A debit levy of $26,065.70 on October 16, 2015 for child support;

- A debit of $1,069.22 on February 9, 2016 for a "O&R Utilities Bill Pymt;"

- A debit of $3,832.31 for "City of Newark Tax;"

- "Amex e-payments" of $13,394, $21,260.88, and $7,483.83 on February 11, 2015, February 26, 2015, and March 24, 2015.

- A check written on March 5, 2015 in the amount of $59,708.00 made payable to "Biditup Auctions Worldwide;" and

- Miscellaneous debits for "BJs," "Target," "Key West Marina," "Tuxedo Wine," "Tuxedo Motel," "Fairway Market," "Lifetime Fitness," "Liberty Science Center," "Kiddie Komer," and "Massage Envy," "Rhodes North Tavern," "Blackman Plumbing," "Life Time Fitness," "Overstock.com."

¶ 153. Through the aforesaid actions, Defendant T. Garbett absconded with Werner Deconstruction's money by siphoning funds from SSNY, stripping it of its assets, and rendering it judgment proof. Statements from T.D. Bank, N.A. reveal that by June 30, 2016 SSNY only maintained $2.81 in the Pre-Payment Account and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718.

¶ 154. The aforesaid actions of Defendants T. Garbett, John Does 1-10 and XYZ Companies 1-10 in misusing SSNY were not for legitimate business purposes but so that SSNY could be used as a mere agent or instrumentality of Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10.

(Proposed Am. Compl. ¶¶ 141-154).

Unlike Siteworks and T. Garbett, the Court finds that Werner Deconstruction has done much more than simply contend that because "Siteworks breached the contract, that Thomas Garbett should be liable." (Def. Br. at 8; Docket Entry No. 28). Indeed, Werner Deconstructions proposed Amended Complaint contains allegations addressing both elements necessary to pierce the corporate veil. When taken as true, the aforementioned allegations plausibly suggest that there was a failure to observe the corporate formalities at Siteworks; that based on the paltry sums of money remaining in the Pre-Payment Account and three other accounts, Siteworks may very well be insolvent; that T. Garbett, the President of Siteworks, siphoned money from Siteworks; and that Siteworks, itself, is merely a front for T. Garbett's operations. Similarly, when taken as true, the aforementioned allegations indicate that it would promote injustice to adhere to the fiction of a separate corporate existence for Siteworks. Indeed, assuming, as the Court must, that T. Garbett in fact stripped Siteworks' assets as pled by Werner Deconstruction, it would certainly be unjust to allow T. Garbett to hide behind the corporate form. As a result, the Court finds that Werner Deconstruction has set forth a plausible claim of veil piercing and the Court shall permit it to make this non-futile amendment.

The Court turns next to Werner Deconstruction's proposed claims against Y. Garbett and Harle. While Werner Deconstruction is correct in asserting that Siteworks and T. Garbett do not have standing to oppose its motion on futility grounds to the extent that it seeks to bring claims for conversion and unjust enrichment against Y. Garbett and R. Harle because Siteworks is unaffected by same, that does not mean that Werner Deconstruction's proposed amendments shall be automatically granted. *See Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, Civil No. 13-5592 (NLH/AMD), 2014 U.S. Dist. LEXIS 31681, * (D.N.J. Feb. 27, 2014) (holding that "current parties 'unaffected by [the] proposed amendment' do not have standing to assert claims

of futility on behalf of proposed defendants." (quoting *Clark v. Hamilton Mortg. Co.*, No. 07-252, 2008 U.S. Dist. LEXIS 26511, *6 (W.D. Mich. April 2, 2008)). Instead, the Court has the inherent authority to review a proposed amendment for futility and the Court exercises this authority herein. *See Worseter-Sims v. Tropicana Entm't, Inc.*, 46 F.Supp.3d 513, 517 (D.N.J. 2014) (recognizing that courts have inherent authority to dismiss claims *sua sponte* for failure to state claim upon which relief can be granted under Rule 12(b)(6)).

In the first instance, the Court finds that whether or not Werner Deconstruction adequately pled facts supporting personal jurisdiction over Y. Garbett and Harle in its proposed Amended Complaint does not impact the viability of same. Here, it is conceivable that the Court has personal jurisdiction over Y. Garbett and Harle. Further, "[t]here is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint." *Mylan Pharms., Inc. v. Kremers Urban Dev. Co.*, C.A. No. 02-1628 GMS, 2003 U.S. Dist. LEXIS 20665, *11-12 (D.Del. Nov. 14, 2003). As a result, the proposed Amended Complaint is not futile because of any failure to do so.

Turning to the substance of Werner Deconstructions' proposed conversion and unjust enrichment claims against Y. Garbett and Harle, the Court finds that Werner Deconstruction has adequately alleged facts supporting same to raise its right to relief above the speculative level. In this regard, in order to set forth a claim for conversion, a plaintiff must show, "'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Giercyk v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, civil Action No. 13-6272, 2015 U.S. Dist. LEXIS 162628, *22, (D.N.J. Dec. 4, 2015) (quoting *Barco Auto Leasing Corp. v. Holt*, 228 N.J. super. 77, 83 (App. Div. 1988). Further, "[w]hen money, as opposed to tangible property, is the

subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion." *Id*. at 22-23. Similarly, to assert a viable claim for unjust enrichment, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Id*. at 20 (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).

The Court finds that Werner Deconstruction's allegations concerning Y. Garbett and R. Harle's use of its money contained in the Pre-Payment account to purchase real property in Chittenden, Vermont are sufficient to set forth plausible claims of conversion and unjust enrichment. In this regard, Werner Deconstruction alleges (1) that $55,000.00 was wired from the Pre-Payment Account to Danile Ewald, Esq. (Mr. Ewald), an attorney at law in Killington, Vermont; (2) that Mr. Ewald was Y. Garbett and R. Harle's attorney in fact; (3) that Mr. Ewald, as their attorney, used the aforementioned $55,000.00 to close a real estate transaction on Y. Garbett and R. Harle's behalf; and (4) that, at a minimum at least $9,852.18 of the $55,000.00 wired to Mr. Ewald from the Pre-Payment Account belonged to Werner Deconstruction. (*See* Proposed Am. Compl. ¶¶ 159-168. In light of the fact that Werner Deconstruction did not maintain a contractual relationship with either Y. Garbett or R. Harle, the Court finds Werner Deconstruction's allegations to be sufficient at this stage of the proceedings to assert claims for conversion and unjust enrichment. *See SRC Constr. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F.Supp.2d 796, 799 (D.N.J. 2013 (finding that absence of contract between parties precluded application of economic loss doctrine).

Finally, the Court addresses, Werner Deconstruction's proposed accounting claim against Y. Garbett. Unlike Werner Deconstruction's other proposed amendments, the Court finds that

this proposed amendment would be futile.  The General Services Agreement incorporating Statement of Work #01, which included the provision requiring certain revenues to be held in escrow and naming Y. Garbett as the escrow agent, was entered into between BTU Solutions and Siteworks.  Werner Deconstruction was not a party to said agreement.  (Ex. E to Cert. of Lauren F. Iannaccone at Werner-00505).  Similarly, Werner Deconstruction was not a party to Statement of Work #01.  Instead, pursuant to its own terms Statement of Work #01 was "between BTU SOLUTIONS ENVIRONMENTAL SERVICES, LLC ('BTU') and Sitework Services NY, Inc." (*Id*. at Werner-00514).  While Statement of Work #01 contained a signature line for Werner Deconstruction, it specifically indicated that "Werner Deconstruction will sign as an acknowledgment of the contract and BTU's ability to enter into the agreement."  (*Id*.)[3]

To support its proposed claim for an accounting and turnover of escrow funds as to Y. Garbett, Werner Deconstruction relies on Article 2.1 of the Subcontract between it and BTU DE.  In its proposed Amended Complaint, Werner Deconstruction alleges that it and BTU DE "agreed that revenues from the demolition of Units 1, 2, and 3 would be deposited into a Project Account that would be administered by Werner Deconstruction" and that "all expenses from the Project would be paid from the Project Account."  (Proposed Am. Compl. ¶ 179). Werner Deconstruction alleges that BTU Solutions entered into the General Services Agreement with Siteworks to further BTU DE's work under the Subcontract and that pursuant to the General Services Agreement and Statement of Work #01, Siteworks agreed to demolish the building containing Units 1, 2, and 3 in furtherance of BTU DE's obligations under the Subcontract  (*Id*. ¶¶ 180-81).  Werner Deconstruction further alleges that in order to provide security that

---

[3] The Court notes that the copy of Statement of Work #01 Werner Deconstruction attached in support of its motion to amend was not, in fact, signed by Werner Deconstruction.  Instead, the only signature that appears on Statement of Work #01 is T. Garbett's signature on behalf of Siteworks.  (*Id*. at Werner-00515).

Siteworks would perform all of its contractual obligations under the General Services Agreement and Statement of Work #01, BTU Solutions and Siteworks agreed that certain revenues would be held in escrow by Y. Garbett. (*Id.* ¶¶ 183-84). Werner Deconstruction then claims that "[a]s administrator of the Project Account that was established pursuant to the subcontract between Werner Deconstruction and [BTU DE], Werener Deconstruction is entitled to an accounting of the escrow funds held by Defendant Y. Garbett." (*Id.* ¶ 186). It further claims that since Siteworks never completed its work under the General Services Agreement and Statement of Work #01 with BTU Solutions, "Werner Deconstruction is entitled to the funds held in escrow by Defendant Y. Garbett because Article 2.1 of the Subcontract requires all revenues generated from the sale of scrap for the Project to be deposited into the Project Account and for all expenses for the Project to be paid from the Project Account." (*Id.* ¶¶ 186-87). Werner Deconstruction's claims, however, are not plausible on their face.

Werner Deconstruction has alleged no facts that would make it reasonable to infer that the Subcontract entered between itself and BTU DE somehow entitles it to the funds held in escrow according to the General Services Agreement and Statement of Work #01 entered into between Siteworks and BTU Solutions. Neither Siteworks nor BTU Solutions was a party to the Subcontract. The fact that BTU Solutions may be a subsidiary of BTU DE is an insufficient basis to impute the acts of one company to the other. Werner Deconstruction certainly has alleged no facts to support ignoring the corporate formalities between BTU DE and BTU Solutions. Similarly, neither BTU DE nor Werner Deconstruction is a party to the General Services Agreement or Statement of Work #01. While Werner Deconstruction may have signed Statement of Work #01, it did so, not as a party to Statement of Work #01, but to acknowledge the agreement between BTU Solutions and Siteworks as well as to acknowledge BTU Solutions'

ability to enter into said agreement. Based on the facts alleged, there is simply no support for Werner Deconstructions claims that the provisions contained in Article 2.1 of the Subcontract (*i.e.*, the agreement between Werner Deconstruction and BTU DE) somehow entitle it to an accounting of and the turnover of funds being held in escrow pursuant to the General Services Agreement and Statement of Work #01 (*i.e.*, the agreement between BTU Solutions and Siteworks). As a result, the Court finds this proposed amendment to be futile and denies Werner Deconstruction's request to assert same.

### III. Conclusion

For the reasons stated above, Werner Deconstruction's motion to amend is GRANTED in part and DENIED in part. An appropriate Order follows.

Dated: April 27, 2017

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
