CONNELL FOLEY LLP
Thomas J. O'Leary
Lauren F. Iannaccone
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500 (Office)
(973) 535-9217 (Facsimile)
Attorneys for Plaintiff, Werner Deconstruction, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

WERNER DECONSTRUCTION, LLC

Plaintiff,

v.

SITEWORKS SERVICES NY, INC., THOMAS
GARBETT, YVONNE GARBETT a/k/a
YVONNE HARLE, RICHARD HARLE, and
JOHN DOES 1-10 and XYZ Companies (fictitious
defendants who participated in the diversion/
conversion of funds owned by Werner
Deconstruction, LLC),

Defendants.

_____

Civil Action No.  15-07682 (MLC/TJB)

**AMENDED COMPLAINT**

Plaintiff Werner Deconstruction, LLC ("Werner Deconstruction"), by and through its attorneys Connell Foley LLP, by way of Amended Complaint against the Defendants says:

### THE PARTIES

1.      Werner Deconstruction is a limited liability company organized and existing under the laws of the State of Texas with a principal place of business located at 919 Milam Street, Suite 2300, Houston Texas 77002.  None of the members of Werner Deconstruction is a citizen of the State of New York.

2.      Defendant Siteworks Services NY, Inc. ("SSNY") is a corporation organized and existing under the laws of the State of New York with a principal place of business located at 192 Strawtown Road, New City, New York 10956.

3.      Upon information and belief, Defendant Thomas Garbett ("T. Garbett") is an officer of SSNY and resides in the State of New York.

4.      Defendant Yvonne Garbett a/k/a Yvonne Harle ("Y. Garbett") is a citizen of the State of New York and, upon information and belief, resides at 5 Hidden Hills Drive, Stony Point, New York, which is located approximately 15 miles from the New York/New Jersey border.  Defendant Y. Garbett is also an attorney at law of the State of New York and maintains a business address at 3 Eberling Road, New City, New York, which is located approximately 9 miles from the New York/New Jersey border. Upon information and belief, Y. Garbett is the sister of Defendant T. Garbett.

5.      Upon information and belief, Defendant Richard Harle ("R. Harle") is a citizen of the State of New York and resides at 5 Hidden Hills Drive, Stony Point, New York, which is located approximately 15 miles from the New York/New Jersey border.

6.      Defendants John Does 1-10 and XYZ Companies 1-10 are fictitious names for any person or company whose identify is presently unknown to Plaintiff who participated in the diversion and/or conversion of funds owned by Werner Deconstruction.

**JURISDICTION AND VENUE**

7.      Subject matter jurisdiction is proper in this Court as the United States District Court has original jurisdiction pursuant to 28 U.S.C. §1332 because the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds seventy five thousand ($75,000.00) dollars.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the events giving rise to disputes occurred in New Jersey.

## FACTS COMMON TO ALL COUNTS

9.     On February 6, 2015, Werner Deconstruction and SSNY entered into a Debris Removal Services Agreement (the "Debris Removal Contract").

10.     Pursuant to the Debris Removal Contract, SSNY agreed to remove a certain demolition debris pile (hereinafter the "Demolition Debris Pile") from the Werner Generating Station in South Amboy, New Jersey (the "Project").

11.     Thereafter, SSNY, upon information and belief, entered into a subcontract with Minerva Enterprises, LLC ("Minerva Enterprises") for the purpose of transporting debris from the Project to a landfill that was licensed to accept material contaminated with asbestos.

12.     Upon information and belief, SSNY also entered into a subcontract with Ani & Joe Abatement Demolition, LLC ("Ani & Joe Abatement") to provide asbestos abatement services in connection with the removal of the Demolition Debris Pile from the Project.

13.     The Demolition Debris Pile at the Project contained approximately 20,000 tons of material that was, among other things, contaminated with asbestos.

14.     Pursuant to the Debris Removal Contract, SSNY agreed that it would use its "best efforts" to complete its work within ten (10) weeks of the effective date (i.e., February 6, 2015) of the Contract and that it would perform the work "to completion."

15.     In exchange for SSNY's services, Werner Deconstruction agreed to pay SSNY at a rate of $112/ton for "Truck/Transport & Disposal," $6/ton for "On Site Material Handling," and $280/Load for "Container Liner & Lining."  Werner Deconstruction made these payments to

SSNY by wiring funds to a certain bank account that had been opened by SSNY (hereinafter the "Pre-Payment Account").

16.     On February 6, 2015, Werner Deconstruction wired an initial $100,000.00 payment to the Pre-Payment Account in accordance with Article 6 of the Contract.

17.     Pursuant to Article 6 of the Debris Removal Contract, Werner Deconstruction and SSNY agreed that the initial $100,000.00 payment was "to be used exclusively for prepayment by Contractor to the Landfill, Contractor for loads, and for services as outlined in Exhibit 'A'" to the Contract.

18.     Pursuant to Article 6 of the Debris Removal Contract, SSNY and Werner Deconstruction also agreed that additional payments would be wired by Werner Deconstruction to the Pre-Payment Account, which were to "be used by Contractor solely and specifically for Contractor's performance of the Work as set forth in Exhibit 'A' [to the Debris Removal Contract], and for no other purpose."

19.     Pursuant to Article 6 paragraph 2 of the Debris Removal Contract, SSNY agreed that it would submit invoices to Werner Deconstruction on a weekly basis.  SSNY further agreed that its invoices would include an estimate of the amount of debris to be loaded and transported for the upcoming week as well as, among other things, the costs that SSNY anticipated would be incurred to remove and to transport the debris to a Landfill during the upcoming week.

20.     Pursuant to Article 6 subparagraph 3 of the Debris Removal Contract, SSNY agreed that it would submit statements to Werner Deconstruction weekly, which would report SSNY's actual costs for the work performed "and an accounting balance sheet and statement from the Landfill Contractor for paid loads, which will include load manifests for the previous week."

21.     Pursuant to Article 6 paragraph 4 of the Debris Removal Contract, Werner Deconstruction agreed to pay SSNY's invoices by wiring funds to the Pre-Payment Account within two (2) days of receiving an invoice from SSNY.

22.     Between February 13, 2015 and May 26, 2015 and at the request of SSNY, Werner Deconstruction wired $2,314,904.96 to the Pre-Payment Account maintained by SSNY pursuant to the aforementioned contractual provisions.

23.     As of May 26, 2015, the total amount that had been wired to the Pre-Payment account by Werner Deconstruction in accordance with the Debris Removal Contract was $2,414,904.96.

24.     In or around May 2015, Werner Deconstruction discovered that, contrary to SSNY's express representations and promises, SSNY failed to pay Minerva Enterprises for all of the debris that it removed from the Project.  Werner Deconstruction learned that SSNY, in order to induce Werner Deconstruction to make additional payments to SSNY, submitted invoices to Werner Deconstruction that misrepresented the status of payments that had been made by SSNY for the removal of Demolition Debris Pile from the Project.

25.     In or around September 2015, Werner Deconstruction discovered that, contrary to SSNY's express representations and promises, SSNY failed to pay Ani & Joe Abatement for all of the asbestos abatement services that it performed at the Project.

**COUNT ONE**
**(Breach of Contract )**
(As to Defendant SSNY)

26.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

**A.    SSNY's Failure to Complete Its Work Under the Debris Removal Contract.**

27.    Pursuant to Article 3A of the Debris Removal Contract, SSNY agreed that it would perform all of the Work required under the Contract to completion.

28.    SSNY breached Article 3A of the Debris Removal Contract by failing to remove the entirety of the Demolition Debris Pile from the Werner Generating Station and by, on or about June 29, 2015, abandoning the Project.

29.    SSNY has not informed Werner Deconstruction of a valid basis for its refusal to complete all of its work under the Debris Removal Contract.

30.    As a direct, proximate, and foreseeable result of the aforesaid breach of contract by SSNY, Werner Deconstruction has been forced to engage another contractor (hereinafter the "Completion Contractor") to finish SSNY's scope of work.

31.    Werner Deconstruction has incurred, and will continue to incur, substantial costs in having the Completion Contractor finish the work. These costs would not have been incurred by Werner Deconstruction if SSNY had completed its work in accordance with the Debris Removal Contract.

32.    As of the date of the filing of this Amended Complaint, Werner Deconstruction has incurred approximately $525,122.94 in additional costs in having the Completion Contractor finish SSNY's scope of work.

**B.    SSNY's Failure to Pay Subcontractors.**

33.    Between February 5, 2015 and May 21, 2015, SSNY issued 14 invoices to Werner Deconstruction pursuant to Article 6 of the Debris Removal Contract.

34.    The total of the aforesaid invoices was $2,414,904.96.

35.     Relying on the invoices received from SSNY and pursuant to its obligations under Article 6 of the Debris Removal Contract, Werner Deconstruction wired 14 pre-payments to the Pre-payment Account so that SSNY could remove the Demolition Debris Pile from the Project in accordance with the Contract.   The total amount of the pre-payments made by Werner Deconstruction to SSNY was $2,414,904.96.

36.     Pursuant to paragraph 6 of the Debris Removal Contract, SSNY agreed that the 14 pre-payments by Werner Deconstruction would be used to, among other things, pay Minerva Enterprises for removing debris from the Project and disposing the debris at a landfill that was licensed to accept material contaminated with asbestos.   SSNY also agreed that the 14 pre-payments would be used to pay Ani & Joe Abatement for asbestos abatement services that it performed in connection with the removal of the Demolition Debris Pile.

37.     Between February 5, 2015 and May 21, 2015, Minerva Enterprises, upon information and belief, issued invoices to SSNY totaling $1,460,704.97.

38.     Between February 5, 2015 and May 21, 2015, SSNY, upon information and belief, only paid Minerva Enterprises $1,220,000.00 from the funds that it had received from Werner Deconstruction.

39.     Even though it had received sufficient funds from Werner Deconstruction, SSNY, upon information and belief, failed to pay Minerva Enterprises $240,704.97.

40.     SSNY breached Article 6 of the Debris Removal Contract by failing to use the funds that had been wired by Werner Deconstruction to pay Minerva Enterprises for all of the debris that had been removed from the Project and transported to a landfill.

41.     Between May 2014 and June 2015, Ani & Joe Abatement, upon information and belief, issued invoices to SSNY totaling $355,373.88.

42.    Upon information and belief, SSNY only paid Ani & Joe Abatement $336,365.88 from the funds that had been received from Werner Demolition.

43.    Even though it had received sufficient funds from Werner Deconstruction, SSNY, upon information and belief, failed to pay Ani & Joe Abatement $19,008.00 for asbestos abatement services that it performed between May 25, 2015 and June 26, 2015.

**C.    SSNY's Failure to Indemnify for Construction Lien Claims by Minerva Enterprises and Ani & Joe Abatement.**

44.    On July 13, 2015, Minerva Enterprises filed a Construction Lien Claim in the amount of $240,704.97 against the Project in the Office of the Clerk of Middlesex County in Book No. 49, Page No. 0176.

45.    On September 22, 2015, Ani & Joe Abatement filed a Construction Lien Claim in the amount of $19,008.00 against the Project in the Office of the Clerk of Middlesex County in Book No. 49, Page No. 0492.

46.    Pursuant to Paragraph 9 of the Debris Removal Contract, SSNY is obligated to defend, to indemnify and to hold Werner Deconstruction harmless from the construction lien claims filed by Minerva Enterprises and Ani & Joe Abatement.

47.    SSNY breached paragraph 9 of the Debris Removal Contract by failing to defend, to indemnify, and to hold Werner Deconstruction harmless from the Construction Lien Claims filed by Minerva Enterprises and Ani & Joe Abatement.

48.    As a direct, proximate, and foreseeable result of the aforesaid breach of contract by SSNY, Werner Deconstruction has incurred, and will continue to incur, substantial attorneys' fees and costs in engaging legal counsel to represent NRG REMA LLC in defending against the construction lien claims filed by Minerva Enterprises and Ani & Joe Abatement in a lawsuit

captioned <u>NRG REMA LLC, et al. v. Creative Environmental Solutions Corp., et al.</u>, Docket No.

MID-L-3587-15, which is pending the Superior Court of New Jersey.

       **D.**      **<u>SSNY's Failure to Refund Pre-Payments Made By Werner Deconstruction.</u>**

49.     As of May 28, 2015, SSNY had a balance of $175,001.89 in the Pre-Payment Account.

50.     Between May 29, 2015 and June 2015, the Project generated 1,952.45 tons of debris, which by Werner Deconstruction's calculations would have caused $70,725.95 to be paid from the Pre-Payment Account leaving a balance of $100,990.88 remaining.

51.     Pursuant to Article 6 paragraph 5 of the Debris Removal Contract, SSNY agreed to refund any remaining funds that had been prepaid by Werner Deconstruction following the completion of work by SSNY.

52.     By letter dated August 10, 2015, Werner Deconstruction demanded that SSNY refund the $100,990.88 balance that was remaining in the Pre-Payment Account.

53.     SSNY breached Article 6 paragraph 5 of the Debris Removal Contract by refusing to refund the $100,990.88 balance that was, upon information and belief, remaining in the Pre-Payment Account.

       **E.**      **<u>SSNY's Failure to Remove Contaminated Tracking Pad</u>.**

54.     In February 2015, SSNY imported a large quantity of stone/gravel to be used as a tracking pad to catch any contaminated debris that fell to the ground while loading trucks to transport debris from the Project.

55.     During the course of its operations at the Project, SSNY contaminated the tracking pad with asbestos containing material s and PCBs.

56.     The tracking pad remained, and continues to remain, in place after SSNY abandoned the Project on June 29, 2015.

57.     Pursuant to Paragraph 1A of the Debris Removal Contract, SSNY agreed that the "Contractor shall provide to Werner all services for the sole purpose of removal from the project site and disposal to an authorized ACM contaminated landfill of building debris and contaminated waste materials ('Debris' or 'Debris Pile') of the demolished power house at the Werner Generating Facility" and that "[t]he Contractor will adhere to and comply with all Federal, State, Local, and OSHA laws, regulations and requirements in the performance of the Work."

58.     By letter dated August 12, 2015, Werner Deconstruction demanded that SSNY remove the stone and gravel that was used as a tracking pad at the Project.   Werner Deconstruction further demanded that SSNY properly dispose of the stone and gravel that had been used as a tracking pad by SSNY during its operations at the Project.

59.     SSNY breached the Debris Removal Contract by refusing to remove stone and gravel that it used as a tracking pad during its operations at the Project.

60.     To date, Werner Deconstruction has incurred approximately $15,950 in costs to perform soil sampling of the tracking pad in order to properly characterize its contaminants. Werner Deconstruction will incur additional costs to remove the tracking pad from the Project and to properly dispose of it at a properly licensed disposal facility.

61.     Further, as a consequence of SSNY's failure to remove the tracking pad, the duration of the Project was extended causing Werner Deconstruction, Inc. to incur additional general conditions and overhead costs as well as additional interest charges on a Letter of Credit

that had been procured by Werner Deconstruction as a performance guarantee for the Project Owner.

62.     As a direct, proximate, and foreseeable result of the aforesaid breaches of contract by SSNY, Werner Deconstruction has been, and continues to be damaged, in an amount to be determined at trial but estimated by Werner Deconstruction to be no less than $737,774.82.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

### COUNT TWO
### (<u>Specific Performance of Contract</u>)
(As to Defendant SSNY)

63.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

64.     Pursuant to Paragraph 4 of Exhibit A to the Debris Removal Contract, SSNY agreed that it would provide Werner Deconstruction with shipping manifests and other documentation required by the U.S. Environmental Protection Agency (hereinafter the "Debris Manifests") for each load of debris that was removed from the Project and transported to a landfill.

65.     Pursuant to Paragraph 1 of the Debris Removal Contract, SSNY also agreed that it "will generate and obtain all necessary and appropriate documentation required in the performance of the Work as records which shall be turned over to Werner for submittal to the owner of the project site, NRG REMA ('NRG')."

66.     By letter dated August 10, 2015, Werner Deconstruction demanded that SSNY provide the original Debris Manifests for all debris that was removed from the Project and transported offsite to a landfill.

67.     SSNY breached the Debris Removal Contract by refusing to provide Werner Deconstruction with the aforesaid Debris Manifests.

68.     By reason of the foregoing, Werner Deconstruction is entitled to an Order granting specific performance of the Debris Removal Contract compelling SSNY to provide Werner Deconstruction with original versions of the aforesaid Debris Manifests.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. granting specific performance of the Contract, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT THREE
## (Quantum Meruit)
(As to Defendant SSNY)

69.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

70.     As a result of SSNY's failure to complete its work and to remove the tracking pad from the Project, Werner Deconstruction was required to perform work and to provide additional services at expenses far greater that what had originally been required by the terms of the Debris Removal Contract.

71.     SSNY knew that Werner Deconstruction, at the time of performance, reasonably expected to be fairly compensated for its work.

72.    SSNY has been unfairly and unjustly enriched to the detriment of Werner Deconstruction.

73.    In light of the foregoing, Werner Deconstruction is entitled to quantum meruit compensation for its uncompensated services provided on behalf of SSNY.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. awarding Plaintiff quantum meruit compensation for the uncompensated services provided by Plaintiff, costs of suit, counsel fees and such other relief as the Court deems just and proper.

### COUNT FOUR
### (Negligence)
(As to Defendant SSNY)

74.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

75.    SSNY owed a duty to Werner Deconstruction not to contaminate the area of the Project where truck loading operations took place with asbestos containing materials and PCBs.

76.    As set forth with particularity in paragraphs 55-57 herein, SSNY breached the aforesaid duty.

77.    As a direct, proximate, and foreseeable result of the breach of the aforesaid duty, Werner Deconstruction has been, and continues to be, damaged.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT FIVE
## <u>(Accounting)</u>
### (As to Defendant SSNY)

78.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

79.     Pursuant to Article 6 paragraph 6 of the Debris Removal Contract, Werner Deconstruction and SSNY agreed "that an audit will be performed immediately following the completion of the Work to insure [sic] the Work was completed in accordance with this Agreement, all vendor and subcontractors were paid, and the accounts balance out.  If the audit determines that there has been an under or over payment, then the Party owing money shall promptly pay the amount due."

80.     SSNY has refused to permit Werner Deconstruction to perform an audit in accordance with Article 6 paragraph 6 of the Debris Removal Contract.

81.     By reason of the foregoing, Werner is an entitled to an accounting of SSNY's disposal and transport of debris from the Project and its disbursal of funds that had been wired by Werner Deconstruction to the Pre-Payment Account maintained by SSNY.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. ordering an accounting of SSNY's disposal and transport of debris from the Project and its disbursal of funds that had been wired by Werner Deconstruction to the Pre-Payment Account maintained by SSNY, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT SIX
### (Fraud)
(As to Defendant SSNY)

82.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

83.    Pursuant to Article 6 paragraph 2 of the Contract, SSNY agreed that it would submit invoices to Werner Deconstruction on a weekly basis and that its invoices would include an estimate of the amount of debris to be loaded and transported for the next week as well as, among other things, the costs that SSNY anticipated would be paid in connection with the disposal of the debris during that week.

84.    Pursuant to Article 6 subparagraph 3 of the Contract, SSNY also agreed that it would submit statements to Werner Deconstruction weekly which would report SSNY's actual costs for the work performed and provide "and an accounting balance sheet and statement from the Landfill Contractor for paid loads, which will include load manifests for the previous week" as aforesaid.

85.    Between February 5, 2015 and May 21, 2015, Paul Desser ("Desser"), an SSNY employee, sent thirteen (13) emails on behalf of SSNY to Werner Deconstruction containing invoices requesting "Pre-Payment for ACM Waste Disposal ON account per Unit Price Agreement" and Microsoft Excel Spreadsheets which reported, among other things, SSNY's "Costs to Date."

86.    On May 15, 2015, Desser on behalf of SSNY sent Werner Deconstruction an email containing an invoice from SSNY for $100,000 and a Microsoft Excel spreadsheet, which reported that SSNY had incurred "actual costs" of $2,029,877.00 for "Loads as of 5 14 15" and reported that $71,527.96 remained "Unused" in the Pre-Payment Account.

87.     Werner Deconstruction relied on the representations contained in Desser's email and wired $100,000 to the Pre-Payment Account maintained by SSNY on May 18, 2015.

88.     On May 21, 2015, Desser on behalf of SSNY sent Werner Deconstruction an email containing an invoice from SSNY for $100,000 and a Microsoft Excel spreadsheet, which reported that SSNY had incurred costs of $2,115,411.00 for "Loads as of 5 20 15" and reported that $85,993.96 remained "Unused" in the Pre-Payment Account.

89.     Werner Deconstruction relied on the representations contained in Desser's email and wired $100,000 to the Pre-Payment Account maintained by SSNY on May 21, 2015.

90.     When Desser sent the 13 emails, including the emails sent on May 18, 2015 and May 21, 2015, SSNY made misrepresentations and omissions of past and present facts regarding payments made by SSNY to Minerva Enterprises.

91.     Contrary to the representations by SSNY in the aforesaid emails sent by Desser, SSNY had not paid Minvera Enterprises for all of the debris that had been removed from the Project as of May 20, 2015.

92.     Upon information and belief, SSNY had failed to pay Minerva Enterprises $240,704.97 even though it had received sufficient funds from Werner Deconstruction to pay Minerva Enterprises.

93.     SSNY knew that it had not paid Minerva Enterprises.

94.     SSNY intended that Werner Deconstruction rely on the statements contained in Desser's 13 emails, including but not limited to the emails that were sent on May 15, 2015 and May 21, 2015.

95.     Werner Deconstruction did in fact rely on SSNY's statements and omissions, which were made with reckless and careless disregard for their veracity.

96.     SSNY knew that the statements and omissions, which were made with reckless and careless disregard for their truth, would likely conceal its failure to pay Minerva Enterprises and would induce Werner Deconstruction to wire additional funds to the Pre-Payment Account maintained by SSNY.

97.     SSNY knew that Werner Deconstruction would reasonably rely upon the representations contained in the 13 emails that Desser sent, including but not limited to the emails that were sent on May 15, 2015 and May 21, 2015.

98.     SSNY's statements and omissions, which were made with reckless and careless disregard for their veracity, allowed SSNY to continue operating on the Project while it was in breach of Article 6 of the Contract.

99.     SSNY's statements and omissions, which were made with reckless and careless disregard for their truth, directly and proximately caused Werner Deconstruction to incur substantial monetary damages.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT SEVEN
### (Negligent Misrepresentation)
(As to Defendant SSNY)

100.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

101.    As set forth with particularity in paragraphs 86-89, Desser, on behalf of SSNY, sent thirteen (13) emails to Werner Deconstruction, which misrepresented the status of payments

made by SSNY for the removal of debris from the Project.  Werner Deconstruction relied on the misrepresentations in the thirteen (13) emails to advance funds to the Pre-Payment Account maintained by SSNY.

102.    SSNY owed Werner Deconstruction a duty to accurately report the status of payments made by SSNY for the removal of debris from the Project.

103.    SSNY breached the aforesaid duty.

104.    As a direct, proximate and foreseeable result of the breach of the aforesaid duty, Werner Deconstruction has been, and continues to be, damaged.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT EIGHT
### (Conversion)
(As to Defendants SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10)

105.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

106.    Werner Deconstruction pre-paid SSNY $2,414,904.96 for the removal of debris from the Project.

107.    SSNY has exercised total domination and control over the pre-payments made by Werner Deconstruction for the removal of debris from the Project and has failed to pay Minerva Enterprises $240,704.97 for debris that was removed from the Project as of May 21, 2015.

108.    Upon information and belief, T. Garbett is the President of SSNY and, therefore, is responsible for every aspect of SSNY's operations.

109.    Upon information and belief, T. Garbett and John Does 1-10 aided and abetted SSNY in its unlawful conversion of the pre-payments made by Werner Deconstruction.  By email dated May 27, 2015, Desser informed Werner Deconstruction that T. Garbett "handles the bank, payments, wires in and out, negotiations with Minerva etc…"

110.    On August 10, 2015, Werner Deconstruction demanded, among other things, that SSNY and T. Garbett pay the $240,704.97 that was owed to Minerva Enterprises, which SSNY had illegally and fraudulently obtained from Werner Deconstruction.  Despite that, T. Garbett, John Does 1-10, and XYZ Companies 1-10 caused SSNY not to pay Minerva Enterprises or return that money to Werner Deconstruction.

111.    Further, T. Garbett, John Does 1-10, and XYZ Companies 1-10, upon information and belief, caused SSNY not to pay the $19,008.00 that was owed to Ani & Joe Abatement, which SSNY illegally and fraudulently obtained from Werner Deconstruction.

112.    SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10 had (and have) no basis or justification for failing to pay Minerva Enterprises or to return the $240,704.97 that SSNY illegally and fraudulently obtained from Werner Deconstruction.  SSNY's, T. Garbett's, John Does 1-10's, and XYZ Companies 1-10's refusal to pay Minerva Enterprises or to return that money to Werner Deconstruction was wrongful.

113.    Werner Deconstruction has suffered damages due to SSNY's conversion of $259,712.97, consisting of amounts that Werner Deconstruction pre-paid directly to SSNY for the removal of the Demolition Debris Pile from the Project and for asbestos abatement services at the Project.

114.    Werner Deconstruction has suffered damages due to T. Garbett's, John Does 1-10's, and XYZ Companies 1-10 actions in aiding and abetting SSNY's conversion of

$259,712.97, consisting of amounts that Werner Deconstruction pre-paid directly to SSNY for the removal of the Demolition Debris Pile from the Project and for asbestos abatement services at the Project.

115.    The actions of SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10 in engaging in the conversion of the pre-payments made by Werner Deconstruction were willful, wanton, outrageous and shocking to the conscience and provide the basis for an award of punitive damages against SSNY, Garbett, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Siteworks Services NY, Inc., Thomas Garbett, John Does 1-10, and XYZ Companies 1-10 for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

<u>**COUNT NINE**</u>
(<u>**New Jersey Consumer Fraud Act**</u>)
(As to Defendants SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10)

116.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

117.    SSNY is a sitework contractor that offers its services to the public through out the New York and New Jersey area.  Werner Deconstruction retained SSNY to provide those services to remove the Demolition Debris Pile from the Project.

118.    The services that SSNY provided to Werner Deconstruction on the Project constitute "merchandise" as that term is defined by the New Jersey Consumer Fraud Act.  <u>See</u> <u>N.J.S.A.</u> 56:8-1.

119.    The actions of SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10, including but not limited to the actions set forth with particularity in paragraphs 86-89 and 107-115, constitute deceptions, frauds, unconscionable commercial practices and misrepresentations in violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, <u>et.</u> <u>seq.</u>

120.    The aforesaid actions of SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10 were unconscionable, deliberate, and knowing.

121.    Werner Deconstruction has suffered an ascertainable loss as a result of the actions taken by SSNY, T. Garbett, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc., Thomas Garbett, John Does 1-10, and XYZ Companies 1-10 awarding compensatory damages, together with pre-judgment interest, treble damages for all damages flowing directly and indirectly from Werner Deconstruction's violations, costs of suit, counsel feels and such other relief as the Court deems just and proper.

### COUNT TEN
### (Veil Piercing Claim)
(As to T. Garbett, John Does 1-10, and XYZ Companies 1-10)

122.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

123.    Upon information and belief, Defendant T. Garbett is the President of SSNY and, therefore, is responsible for every aspect of SSNY's operations as aforesaid.

124.    Between February 6, 2015 and May 26, 2015, Werner Deconstruction entrusted SSNY with $2,414,904.96 via wire transfer into the Pre-Payment Account that had been designated by SSNY.

125.    Before Werner Deconstruction made its first wire transfer to the Pre-Payment Account on February 6, 2015, that account had a balance of $7,081.95.

126.    In addition to the Pre-Payment Account, Defendant T. Garbett controlled at least 3 other checking accounts with T.D. Bank N.A. that identified "Siteworks Service Corp." as the account holder, to wit: XXXXX8340 (i.e., the Pre-Payment Account), XXXXXX3942, XXXXXX9651, and XXXXX9718.  On February 6, 2015, those three accounts had a collective balance of $849,931.01.

127.    Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10 misused SSNY to accomplish unlawful purposes, including, without limitation, absconding with Werner Deconstruction's money.

128.    Among other things, SSNY failed to pay Minerva Enterprises $240,704.97 and failed to pay Ani & Joe Abatement $19,008.00.  SSNY failed to pay Minerva Enterprises and Ani & Joe Abatement even though Werner Deconstruction had entrusted SSNY with $2,414,904.96 to be used solely for the removal of the Demolition Debris Pile and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 had a collective balance of $849,931.01 as of February 6, 2015.

129.    Between February 6, 2015 and June 30, 2015, Defendant T. Garbett advanced his own personal interests by withdrawing $1,331,404.00 in cash from the Pre-Payment Account.

130.    Statements from T.D. Bank N.A. reveal a myriad of transactions from the Pre-Payment Account that had no legitimate connection to the removal of Demolition Debris Pile from the Werner Generating Station.  Examples of improper transactions from the Pre-Payment Account where Defendant T. Garbett advanced his own personal interests include but are not limited to:

- A debit card purchase at PC Richard & Son on February 9, 2015 in the amount of $2,642.86;

- A debit card purchase for "City of Newark Tax" on February 23, 2015 in the amount of $1,509.18;

- A debit card purchase from the "New York State DMV" on April 28, 2015 in the amount of $4,871.25;

- A debit card purchase from "WPY Affinity Health Plan" on May 4, 2015 in the amount of $1,213.56; and

- Miscellaneous debit card purchases between February 2015 and June 2015 at "Lowes," "The River Palm Terrace," "The Rhodes North Tavern," "Advance Auto Parts," "The Orange Top Diner," "Massage Envy," "Auto Zone," "McDonalds," "Dunkin Donuts," "Apple Store," "Warwick Car Wash," "Somerset Tire Service," "Restaurant Depot," "The Home Depot."

131.    Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10 failed to observe the corporate form of SSNY as a regular and distinct entity, failed to observe corporate formalities, commingled and transferred funds of the company, and failed to hold the company out as a separate entity in terms of its business operations from their own personal interests.

132.    By way of example, on February 6, 2015 and February 13, 2015, Werner Deconstruction wired $100,000.00 and $314,904.96 to the Pre-Payment Account. On February 6, 2015 and February 13, 2015, $100,000.00 and $110,000.00 was transferred to Account No. XXXXX9718 by, upon information and belief, Defendant T. Garbett.  On February 13, 2015 and February 17, 2015, Defendant T. Garbett advanced his personal interests by withdrawing $400,000.00 in cash from the Pre-Payment Account and Account No. XXXXX9718.

133.    In addition to the $1.3 million in cash that was withdrawn from the Pre-Payment Account, Defendant T. Garbett advanced his personal interests by withdrawing approximately $1.8 million in cash from Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 between February 2015 and August 2015.

134.    Statements from T.D. Bank N.A. for Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 reveal a myriad of transactions that had no legitimate business purpose.  Examples of improper transactions which advanced the personal interests of Defendant T. Garbett include but are not limited to:

- A check written on February 11, 2015 in the amount of $9,995.68 made payable to "NYS Child Support Processing Center"

- A debit levy of $57,145 on July 21, 2015 for child support;

- A debit levy of $26,065.70 on October 16, 2015 for child support;

- A debit of $1,069.22 on February 9, 2016 for a "O&R Utilities Bill Pymt;"

- A debit of $3,832.31 for "City of Newark Tax;"

- "Amex e-payments" of $13,394, $21,260.88, and $7,483.83 on February 11, 2015, February 26, 2015, and March 24, 2015.

- A check written on March 5, 2015 in the amount of $59,708.00 made payable to "Biditup Auctions Worldwide;" and

- Miscellaneous debits for "BJs," "Target," "Key West Marina," "Tuxedo Wine," "Tuxedo Motel," "Fairway Market," "Lifetime Fitness," "Liberty Science Center," "Kiddie Korner," and "Massage Envy," "Rhodes North Tavern," "Blackman Plumbing," "Life Time Fitness," "Overstock.com."

135.    Through the aforesaid actions, Defendant T. Garbett absconded with Werner Deconstruction's money by siphoning funds from SSNY, stripping it of its assets, and rendering it judgment proof.  Statements from T.D. Bank, N.A. reveal that by June 30, 2016 SSNY only maintained $2.81 in the Pre-Payment Account and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718.

136.    The aforesaid actions of Defendants T. Garbett, John Does 1-10 and XYZ Companies 1-10 in misusing SSNY were not for legitimate business purposes but so that SSNY

could be used as a mere agent or instrumentality of Defendants T. Garbett, John Does 1-10, and XYZ Companies 1-10.

137.    As a result of the Defendants' misconduct, the corporate veil of SSNY should be pierced and Defendants T. Garbett, John Does 1-10 and XYZ Companies 1-10 should be held individually liable for the funds that were absconded from Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Siteworks Services NY, Inc., Thomas Garbett, John Does 1-10, and XYZ Companies 1-10 for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT ELEVEN
### (Conversion)
(As to Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10)

138.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

139.    Between February 6, 2015 and May 26, 2015, Werner Deconstruction provided SSNY with $2,414,904.96 via wire transfer into the Pre-Payment Account that had been designated by SSNY.  Pursuant to Article 6 of the Debris Removal Contract, SSNY agreed that the funds wired by Werner Deconstruction were to be used solely to remove the Demolition Debris Pile at the Werner Generating Station as aforesaid.

140.    As set forth with particularity in paragraphs 123 - 137 herein, Defendant T Garbett absconded with Werner Deconstruction's money.

141.    Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 aided and abetted Defendant T. Garbett in absconding with Werner Deconstruction's money.

142.    On February 20, 2015, just two weeks after Werner Deconstruction made its first wire of $100,000.00 into the Pre-Payment Account, Defendant Y. Garbett entered into a contract with Alex and Lucas Widney ("Mr. & Mrs. Widney") of Waretown, New Jersey to purchase real property located at 34 Mountain Spring Road, Chittenden, Vermont 05737 for $250,000.00 (hereinafter the "Chittenden Vermont Purchase").

143.    The material terms of the Chittenden Vermont Purchase were that Defendants Y. Garbett and R. Harle would provide a $50,000.00 deposit and take a first mortgage of $200,000.00 from Mr. & Mrs. Widney at an interest rate of 4% amortized over 30 years with a balloon payment of $195,613.80 due eighteen (18) months after closing.

144.    On April 22, 2015, Defendants Y. Garbett and R. Harle each executed a Power of Attorney authorizing Daniel Ewald, Esq. ("Ewald"), an attorney at law in Killington, Vermont to close the Chittenden Vermont Purchase.

145.    On April 22, 2015, $55,000.00 was transferred via wire from the Pre-Payment Account to Ewald.

146.    The funds that were transferred to Ewald belonged to Werner Deconstruction.

147.    An April 2015 bank statement from T.D. Bank, N.A. reveals that the Pre-Payment Account had a beginning balance of $20,748.71 on April 1, 2015, that Werner Deconstruction made wire transfers of $950,000.00 into the Pre-Payment Account in April 2015, and that cash deposits of $24,399.11 were made into the Pre-Payment Account in April 2015.

148.    On April 23, 2015, Ewald, as attorney in fact for Defendants Y. Garbett and R. Harle, closed the Chittenden Vermont Purchase with the $55,000.00 that had been wired on April 22, 2015.

149.    To complete the transaction, Ewald, as attorney in fact for Defendants Y. Garbett and R. Harle, executed a $200,000.00 promissory note in favor of Mr. & Mrs. Widney requiring Y. Garbett and R. Harle to make monthly principal and interest payments of $954.83 "beginning May 17, 2015 and continuing each and every month thereafter for 18 months (October 17, 2016), at which time a [sic] the entire principal plus any accrued interest shall immediately become due and payable in full."  The note was secured with a first mortgage on the property known as 34 Mountain Spring Road, Chittenden, Vermont.

150.    Since the closing of the Chittenden Vermont Purchase, Defendants Y. Garbett and R. Harle have, upon information and belief, made monthly mortgage payments of $954.83 to Mr. & Mrs. Widney at their address in Waretown, New Jersey.

151.    By and through their actions, including specifically, but without limitation, the acts alleged herein in paragraphs 142-151 and in other particulars subject to further investigation and discovery, Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 converted Werner Deconstruction's money.

152.    The actions of Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 in engaging in the conversion of Werner Deconstruction's money were willful, wanton, outrageous and shocking to the conscience and provide the basis for an award of punitive damages against Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Yvonne Garbett, Richard Harle, John Does 1-10, and XYZ Companies 1-10 for compensatory damages, punitive damages, together with pre-

judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT TWELVE
### (Unjust Enrichment)
(As to Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10)

153.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

154.    As set forth with particularity in paragraphs 142-151 herein, Defendants Y. Garbett, R. Harle, John Does 1-10, and aided and abetted T. Garbett and absconding with Werner Deconstruction's money.

155.    Defendants Y. Garbett and R. Harle obtained a benefit to the detriment of Werner Deconstruction, and retention of that benefit by Y. Garbett and R. Harle would be unjust.

156.    Among other things, Defendants Y. Garbett and R. Harle received $55,000.00 of Werner Deconstruction's money and used those funds to close the Chittenden Vermont Purchase.

157.    By and through their actions, including specifically, but without limitation, the acts alleged in paragraphs 142-151 and in other particulars subject to further investigation and discovery, Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 have been unjustly enriched to the detriment of Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Yvonne Garbett, Richard Harle, John Does 1-10, and XYZ Companies 1-10 for an Order for disgorgement of funds belonging to Werner Deconstruction, LLC, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

Mandatory arbitration pursuant to Local Rule of Civil Procedure 201.1 is not appropriate in this case because the damages sought exceed $150,000.00.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to L. Civ. R. 11.2, I hereby certify that the within action is not the subject of any other action pending in any Court, or of any pending arbitration or administrative proceeding.

CONNELL FOLEY LLP
Attorneys for Plaintiff,
Werner Deconstruction, LLC


_/s/ Thomas J. O'Leary_
THOMAS J. O'LEARY

Date: May 2, 2017