WALSH PIZZI O'REILLY FALANGA LLP
Thomas J. O'Leary
Joseph L. Linares
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, New Jersey 07102
(973) 757-1100 (Office)
(973) 757-1090 (Facsimile)
Attorneys for Plaintiff, Werner Deconstruction, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

WERNER DECONSTRUCTION, LLC      Civil Action No.  15-07682 (MLC/TJB)

                                     **SECOND AMENDED COMPLAINT**

         Plaintiff,

         v.

SITEWORKS SERVICES NY, INC., THOMAS
A. GARBETT, YVONNE GARBETT a/k/a
YVONNE HARLE, RICHARD HARLE,
SITEWORKS SERVICES CORP., SITEWORKS
SERVICES NJ, INC., THOMAS K. GARBETT,
JOHN DOES 1-10 and XYZ Companies 1-10 (fictitious
defendants who participated in the diversion/
conversion of funds owned by Werner
Deconstruction, LLC),

         Defendants.

_____

Plaintiff Werner Deconstruction, LLC ("Werner Deconstruction"), by and through its

attorneys Connell Foley LLP, by way of Amended Complaint against the Defendants says:

## THE PARTIES

1.       Werner Deconstruction is a limited liability company organized and existing

under the laws of the State of Texas with a principal place of business located at 919 Milam

Street, Suite 2300, Houston Texas 77002.  None of the members of Werner Deconstruction is a citizen of the State of New York.

2.      Defendant Siteworks Services NY, Inc. ("SSNY") was a corporation that was organized and formerly existed under the laws of the State of New York with a principal place of business located at 192 Strawtown Road, New City, New York 10956.

3.      Upon information and belief, Defendant Thomas A. Garbett ("T.A.Garbett") was an officer of SSNY, SS Corp., and SSNJ and resides at 40 Pine Road, Tuxedo Park,  New York, 10987.

4.      Defendant Yvonne Garbett a/k/a Yvonne Harle ("Y. Garbett") is a citizen of the State of New York and, upon information and belief, resides at 5 Hidden Hills Drive, Stony Point, New York, which is located approximately 15 miles from the New York/New Jersey border.  Defendant Y. Garbett is also an attorney at law of the State of New York and maintains a business address at 3 Eberling Road, New City, New York, which is located approximately 9 miles from the New York/New Jersey border. Upon information and belief, Y. Garbett is the sister of Defendant T.A. Garbett.

5.      Upon information and belief, Defendant Richard Harle ("R. Harle") is a citizen of the State of New York and resides at 5 Hidden Hills Drive, Stony Point, New York, which is located approximately 15 miles from the New York/New Jersey border.

6.      Upon information and belief, Defendant Siteworks Services Corp. ("SS Corp.") is not an organized legal entity but has its principal place of business located at 192 Strawtown Road, New City, New York 10956.

7.      Upon information and belief, Defendant Siteworks Services NJ, Inc. ("SSNJ") is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business located at 30 Clifton Street, Suite 1, Newark, New Jersey 07114.

8.      Upon information and belief, Defendant Thomas K. Garbett ("T.K. Garbett") is an officer of SSNY, SS Corp., and SSNJ and resides at 162 Strawtown Road, New City, New York 10956.

9.      Defendants John Does 1-10 and XYZ Companies 1-10 are fictitious names for any person or company whose identify is presently unknown to Plaintiff who participated in the diversion and/or conversion of funds owned by Werner Deconstruction.

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction is proper in this Court as the United States District Court for the District of New Jersey has original jurisdiction pursuant to 28 U.S.C. §1332 because the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds seventy five thousand ($75,000.00) dollars.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the events giving rise to disputes occurred in New Jersey.

## FACTS COMMON TO ALL COUNTS

12.     On February 6, 2015, Werner Deconstruction and SSNY entered into a Debris Removal Services Agreement (the "Debris Removal Contract").

13.     Pursuant to the Debris Removal Contract, SSNY agreed to remove a certain demolition debris pile (hereinafter the "Demolition Debris Pile") from the Werner Generating Station in South Amboy, New Jersey (the "Project").

14.     Thereafter, SSNY, upon information and belief, entered into a subcontract with Minerva Enterprises, LLC ("Minerva Enterprises") for the purpose of transporting debris from the Project to a landfill that was licensed to accept material contaminated with asbestos.

15.     Upon information and belief, SSNY also entered into a subcontract with Ani & Joe Abatement Demolition, LLC ("Ani & Joe Abatement") to provide asbestos abatement services in connection with the removal of the Demolition Debris Pile from the Project.

16.     The Demolition Debris Pile at the Project contained approximately 20,000 tons of material that was, among other things, contaminated with asbestos.

17.     Pursuant to the Debris Removal Contract, SSNY agreed that it would use its "best efforts" to complete its work within ten (10) weeks of the effective date (i.e., February 6, 2015) of the Contract and that it would perform the work "to completion."

18.     In exchange for SSNY's services, Werner Deconstruction agreed to pay SSNY at a rate of $112/ton for "Truck/Transport & Disposal," $6/ton for "On Site Material Handling," and $280/Load for "Container Liner & Lining."  Werner Deconstruction made these payments to SSNY by wiring funds to bank account no. XXXXXX8340 that had been opened by T.K. Garbett on behalf of SS Corp (hereinafter the "Pre-Payment Account").

19.     On February 6, 2015, Werner Deconstruction wired an initial $100,000.00 payment to the Pre-Payment Account in accordance with Article 6 of the Contract.

20.     Pursuant to Article 6 of the Debris Removal Contract, Werner Deconstruction and SSNY agreed that the initial $100,000.00 payment was "to be used exclusively for prepayment by Contractor to the Landfill, Contractor for loads, and for services as outlined in Exhibit 'A'" to the Contract.

4

21.    Pursuant to Article 6 of the Debris Removal Contract, SSNY and Werner Deconstruction also agreed that additional payments would be wired by Werner Deconstruction to the Pre-Payment Account, which were to "be used by Contractor solely and specifically for Contractor's performance of the Work as set forth in Exhibit 'A' [to the Debris Removal Contract], and for no other purpose."

22.    Pursuant to Article 6 paragraph 2 of the Debris Removal Contract, SSNY agreed that it would submit invoices to Werner Deconstruction on a weekly basis.  SSNY further agreed that its invoices would include an estimate of the amount of debris to be loaded and transported for the upcoming week as well as, among other things, the costs that SSNY anticipated would be incurred to remove and to transport the debris to a Landfill during the upcoming week.

23.    Pursuant to Article 6 subparagraph 3 of the Debris Removal Contract, SSNY agreed that it would submit statements to Werner Deconstruction weekly, which would report SSNY's actual costs for the work performed "and an accounting balance sheet and statement from the Landfill Contractor for paid loads, which will include load manifests for the previous week."

24.    Pursuant to Article 6 paragraph 4 of the Debris Removal Contract, Werner Deconstruction agreed to pay SSNY's invoices by wiring funds to the Pre-Payment Account within two (2) days of receiving an invoice from SSNY.

25.    Between February 13, 2015 and May 26, 2015 and at the request of SSNY, Werner Deconstruction wired $2,314,904.96 to the Pre-Payment Account which was supposed to be maintained by SSNY pursuant to the aforementioned contractual provisions.

26.    As of May 26, 2015, the total amount that had been wired to the Pre-Payment Account by Werner Deconstruction in accordance with the Debris Removal Contract was $2,414,904.96.

27.    In or around May 2015, Werner Deconstruction discovered that, contrary to SSNY's express representations and promises, SSNY failed to pay Minerva Enterprises for all of the debris that it removed from the Project.  Werner Deconstruction learned that SSNY, in order to induce Werner Deconstruction to make additional payments to SSNY, submitted invoices to Werner Deconstruction that misrepresented the status of payments that had been made by SSNY for the removal of Demolition Debris Pile from the Project.

28.    In or around September 2015, Werner Deconstruction discovered that, contrary to SSNY's express representations and promises, SSNY failed to pay Ani & Joe Abatement for all of the asbestos abatement services that it performed at the Project.

**COUNT ONE**
**(Breach of Contract )**
(As to Defendant SSNY)

29.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

**A.    SSNY's Failure to Complete Its Work Under the Debris Removal Contract.**

30.    Pursuant to Article 3A of the Debris Removal Contract, SSNY agreed that it would perform all of the Work required under the Contract to completion.

31.    SSNY breached Article 3A of the Debris Removal Contract by failing to remove the entirety of the Demolition Debris Pile from the Werner Generating Station and by, on or about June 29, 2015, abandoning the Project.

32.     SSNY has not informed Werner Deconstruction of a valid basis for its refusal to complete all of its work under the Debris Removal Contract.

33.     As a direct, proximate, and foreseeable result of the aforesaid breach of contract by SSNY, Werner Deconstruction has been forced to engage another contractor (hereinafter the "Completion Contractor") to finish SSNY's scope of work.

34.     Werner Deconstruction has incurred, and will continue to incur, substantial costs in having the Completion Contractor finish the work. These costs would not have been incurred by Werner Deconstruction if SSNY had completed its work in accordance with the Debris Removal Contract.

35.     As of the date of the filing of this Amended Complaint, Werner Deconstruction has incurred approximately $525,122.94 in additional costs in having the Completion Contractor finish SSNY's scope of work.

**B.    SSNY's Failure to Pay Subcontractors.**

36.     Between February 5, 2015 and May 21, 2015, SSNY issued 14 invoices to Werner Deconstruction pursuant to Article 6 of the Debris Removal Contract.

37.     The total of the aforesaid invoices was $2,414,904.96.

38.     Relying on the invoices received from SSNY and pursuant to its obligations under Article 6 of the Debris Removal Contract, Werner Deconstruction wired 14 pre-payments to the Pre-payment Account so that SSNY could remove the Demolition Debris Pile from the Project in accordance with the Contract.  The total amount of the pre-payments made by Werner Deconstruction to SSNY was $2,414,904.96.

39.     Pursuant to paragraph 6 of the Debris Removal Contract, SSNY agreed that the 14 pre-payments by Werner Deconstruction would be used to, among other things, pay Minerva

7

Enterprises for removing debris from the Project and disposing the debris at a landfill that was licensed to accept material contaminated with asbestos.  SSNY also agreed that the 14 pre-payments would be used to pay Ani & Joe Abatement for asbestos abatement services that it performed in connection with the removal of the Demolition Debris Pile.

40.     Between February 5, 2015 and May 21, 2015, Minerva Enterprises, upon information and belief, issued invoices to SSNY totaling $1,460,704.97.

41.     Between February 5, 2015 and May 21, 2015, SSNY, upon information and belief, only paid Minerva Enterprises $1,220,000.00 from the funds that it had received from Werner Deconstruction.

42.     Even though it had received sufficient funds from Werner Deconstruction, SSNY, upon information and belief, failed to pay Minerva Enterprises $240,704.97.

43.     SSNY breached Article 6 of the Debris Removal Contract by failing to use the funds that had been wired by Werner Deconstruction to pay Minerva Enterprises for all of the debris that had been removed from the Project and transported to a landfill.

44.     Between May 2014 and June 2015, Ani & Joe Abatement, upon information and belief, issued invoices to SSNY totaling $355,373.88.

45.     Upon information and belief, SSNY only paid Ani & Joe Abatement $336,365.88 from the funds that had been received from Werner Demolition.

46.     Even though it had received sufficient funds from Werner Deconstruction, SSNY, upon information and belief, failed to pay Ani & Joe Abatement $19,008.00 for asbestos abatement services that it performed between May 25, 2015 and June 26, 2015.

8

C.    **SSNY's Failure to Indemnify for Construction Lien Claims by Minerva Enterprises and Ani & Joe Abatement**.

47.    On July 13, 2015, Minerva Enterprises filed a Construction Lien Claim in the amount of $240,704.97 against the Project in the Office of the Clerk of Middlesex County in Book No. 49, Page No. 0176.

48.    On September 22, 2015, Ani & Joe Abatement filed a Construction Lien Claim in the amount of $19,008.00 against the Project in the Office of the Clerk of Middlesex County in Book No. 49, Page No. 0492.

49.    Pursuant to Paragraph 9 of the Debris Removal Contract, SSNY is obligated to defend, to indemnify and to hold Werner Deconstruction harmless from the construction lien claims filed by Minerva Enterprises and Ani & Joe Abatement.

50.    SSNY breached paragraph 9 of the Debris Removal Contract by failing to defend, to indemnify, and to hold Werner Deconstruction harmless from the Construction Lien Claims filed by Minerva Enterprises and Ani & Joe Abatement.

51.    As a direct, proximate, and foreseeable result of the aforesaid breach of contract by SSNY, Werner Deconstruction has incurred, and will continue to incur, substantial attorneys' fees and costs in engaging legal counsel to represent NRG REMA LLC in defending against the construction lien claims filed by Minerva Enterprises and Ani & Joe Abatement in a lawsuit captioned NRG REMA LLC, et al. v. Creative Environmental Solutions Corp., et al., Docket No. MID-L-3587-15, which was then pending the Superior Court of New Jersey.

D.    **SSNY's Failure to Refund Pre-Payments Made By Werner Deconstruction.**

52.    As of May 28, 2015, SSNY had a balance of $175,001.89 in the Pre-Payment Account.

53.     Between May 29, 2015 and June 2015, the Project generated 1,952.45 tons of debris, which by Werner Deconstruction's calculations would have caused $70,725.95 to be paid from the Pre-Payment Account leaving a balance of $207,537.69 remaining.

54.     Pursuant to Article 6 paragraph 5 of the Debris Removal Contract, SSNY agreed to refund any remaining funds that had been prepaid by Werner Deconstruction following the completion of work by SSNY.

55.     By letter dated August 10, 2015, Werner Deconstruction demanded that SSNY refund the $207,537.69 balance that was remaining in the Pre-Payment Account.

56.     SSNY breached Article 6 paragraph 5 of the Debris Removal Contract by refusing to refund the $207.537.69 balance that was, upon information and belief, remaining in the Pre-Payment Account.

**E.     SSNY's Failure to Remove Contaminated Tracking Pad.**

57.     In February 2015, SSNY imported a large quantity of stone/gravel to be used as a tracking pad to catch any contaminated debris that fell to the ground while loading trucks to transport debris from the Project.

58.     During the course of its operations at the Project, SSNY contaminated the tracking pad with asbestos containing material s and PCBs.

59.     The tracking pad remained, and continues to remain, in place after SSNY abandoned the Project on June 29, 2015.

60.     Pursuant to Paragraph 1A of the Debris Removal Contract, SSNY agreed that the "Contractor shall provide to Werner all services for the sole purpose of removal from the project site and disposal to an authorized ACM contaminated landfill of building debris and contaminated waste materials ('Debris' or 'Debris Pile') of the demolished power house at the

Werner Generating Facility" and that "[t]he Contractor will adhere to and comply with all Federal, State, Local, and OSHA laws, regulations and requirements in the performance of the Work."

61.    By letter dated August 12, 2015, Werner Deconstruction demanded that SSNY remove the stone and gravel that was used as a tracking pad at the Project.    Werner Deconstruction further demanded that SSNY properly dispose of the stone and gravel that had been used as a tracking pad by SSNY during its operations at the Project.

62.    SSNY breached the Debris Removal Contract by refusing to remove stone and gravel that it used as a tracking pad during its operations at the Project.

63.    To date, Werner Deconstruction has incurred approximately $15,950 in costs to perform soil sampling of the tracking pad in order to properly characterize its contaminants. Werner Deconstruction will incur additional costs to remove the tracking pad from the Project and to properly dispose of it at a properly licensed disposal facility.

64.    Further, as a consequence of SSNY's failure to remove the tracking pad, the duration of the Project was extended causing Werner Deconstruction, Inc. to incur additional general conditions and overhead costs as well as additional interest charges on a Letter of Credit that had been procured by Werner Deconstruction as a performance guarantee for the Project Owner.

65.    As a direct, proximate, and foreseeable result of the aforesaid breaches of contract by SSNY, Werner Deconstruction has been, and continues to be damaged, in an amount to be determined at trial but estimated by Werner Deconstruction to be no less than $737,774.82.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory

damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT TWO
### (Specific Performance of Contract)
(As to Defendant SSNY)

66.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

67.    Pursuant to Paragraph 4 of Exhibit A to the Debris Removal Contract, SSNY agreed that it would provide Werner Deconstruction with shipping manifests and other documentation required by the U.S. Environmental Protection Agency (hereinafter the "Debris Manifests") for each load of debris that was removed from the Project and transported to a landfill.

68.    Pursuant to Paragraph 1 of the Debris Removal Contract, SSNY also agreed that it "will generate and obtain all necessary and appropriate documentation required in the performance of the Work as records which shall be turned over to Werner for submittal to the owner of the project site, NRG REMA ('NRG')."

69.    By letter dated August 10, 2015, Werner Deconstruction demanded that SSNY provide the original Debris Manifests for all debris that was removed from the Project and transported offsite to a landfill.

70.    SSNY breached the Debris Removal Contract by refusing to provide Werner Deconstruction with the aforesaid Debris Manifests.

71.    By reason of the foregoing, Werner Deconstruction is entitled to an Order granting specific performance of the Debris Removal Contract compelling SSNY to provide Werner Deconstruction with original versions of the aforesaid Debris Manifests.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. granting specific performance of the Contract, costs of suit, counsel fees and such other relief as the Court deems just and proper.

### COUNT THREE
### <u>(Quantum Meruit)</u>
(As to Defendant SSNY)

72.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

73.    As a result of SSNY's failure to complete its work and to remove the tracking pad from the Project, Werner Deconstruction was required to perform work and to provide additional services at expenses far greater that what had originally been required by the terms of the Debris Removal Contract.

74.    SSNY knew that Werner Deconstruction, at the time of performance, reasonably expected to be fairly compensated for its work.

75.    SSNY has been unfairly and unjustly enriched to the detriment of Werner Deconstruction.

76.    In light of the foregoing, Werner Deconstruction is entitled to quantum meruit compensation for its uncompensated services provided on behalf of SSNY.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. awarding Plaintiff quantum meruit compensation for the uncompensated services provided by Plaintiff, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT FOUR
### (Negligence)
(As to Defendant SSNY)

77.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

78.     SSNY owed a duty to Werner Deconstruction not to contaminate the area of the Project where truck loading operations took place with asbestos containing materials and PCBs.

79.     As set forth with particularity in paragraphs 58-60 herein, SSNY breached the aforesaid duty.

80.     As a direct, proximate, and foreseeable result of the breach of the aforesaid duty, Werner Deconstruction has been, and continues to be, damaged.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT FIVE
### (Accounting)
(As to Defendant SSNY)

81.     Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

82.     Pursuant to Article 6 paragraph 6 of the Debris Removal Contract, Werner Deconstruction and SSNY agreed "that an audit will be performed immediately following the completion of the Work to insure [sic] the Work was completed in accordance with this Agreement, all vendor and subcontractors were paid, and the accounts balance out.  If the audit

determines that there has been an under or over payment, then the Party owing money shall promptly pay the amount due."

83.    SSNY has refused to permit Werner Deconstruction to perform an audit in accordance with Article 6 paragraph 6 of the Debris Removal Contract.

84.    By reason of the foregoing, Werner is an entitled to an accounting of SSNY's disposal and transport of debris from the Project and its disbursal of funds that had been wired by Werner Deconstruction to the Pre-Payment Account maintained by SSNY.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. ordering an accounting of SSNY's disposal and transport of debris from the Project and its disbursal of funds that had been wired by Werner Deconstruction to the Pre-Payment Account maintained by SSNY, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT SIX
## (Fraud)
### (As to Defendant SSNY)

85.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

86.    Pursuant to Article 6 paragraph 2 of the Contract, SSNY agreed that it would submit invoices to Werner Deconstruction on a weekly basis and that its invoices would include an estimate of the amount of debris to be loaded and transported for the next week as well as, among other things, the costs that SSNY anticipated would be paid in connection with the disposal of the debris during that week.

87.     Pursuant to Article 6 subparagraph 3 of the Contract, SSNY also agreed that it would submit statements to Werner Deconstruction weekly which would report SSNY's actual costs for the work performed and provide "and an accounting balance sheet and statement from the Landfill Contractor for paid loads, which will include load manifests for the previous week" as aforesaid.

88.     Between February 5, 2015 and May 21, 2015, Paul Desser ("Desser"), an SSNY employee, sent thirteen (13) emails on behalf of SSNY to Werner Deconstruction containing invoices requesting "Pre-Payment for ACM Waste Disposal ON account per Unit Price Agreement" and Microsoft Excel Spreadsheets which reported, among other things, SSNY's "Costs to Date."

89.     On May 15, 2015, Desser on behalf of SSNY sent Werner Deconstruction an email containing an invoice from SSNY for $100,000 and a Microsoft Excel spreadsheet, which reported that SSNY had incurred "actual costs" of $2,029,877.00 for "Loads as of 5 14 15" and reported that $71,527.96 remained "Unused" in the Pre-Payment Account.

90.     Werner Deconstruction relied on the representations contained in Desser's email and wired $100,000 to the Pre-Payment Account maintained by SSNY on May 18, 2015.

91.     On May 21, 2015, Desser on behalf of SSNY sent Werner Deconstruction an email containing an invoice from SSNY for $100,000 and a Microsoft Excel spreadsheet, which reported that SSNY had incurred costs of $2,115,411.00 for "Loads as of 5 20 15" and reported that $85,993.96 remained "Unused" in the Pre-Payment Account.

92.     Werner Deconstruction relied on the representations contained in Desser's email and wired $100,000 to the Pre-Payment Account maintained by SSNY on May 21, 2015.

93.    When Desser sent the 13 emails, including the emails sent on May 18, 2015 and May 21, 2015, SSNY made misrepresentations and omissions of past and present facts regarding payments made by SSNY to Minerva Enterprises.

94.    Contrary to the representations by SSNY in the aforesaid emails sent by Desser, SSNY had not paid Minvera Enterprises for all of the debris that had been removed from the Project as of May 20, 2015.

95.    Upon information and belief, SSNY had failed to pay Minerva Enterprises $240,704.97 even though it had received sufficient funds from Werner Deconstruction to pay Minerva Enterprises.

96.    SSNY knew that it had not paid Minerva Enterprises.

97.    SSNY intended that Werner Deconstruction rely on the statements contained in Desser's 13 emails, including but not limited to the emails that were sent on May 15, 2015 and May 21, 2015.

98.    Werner Deconstruction did in fact rely on SSNY's statements and omissions, which were made with reckless and careless disregard for their veracity.

99.    SSNY knew that the statements and omissions, which were made with reckless and careless disregard for their truth, would likely conceal its failure to pay Minerva Enterprises and would induce Werner Deconstruction to wire additional funds to the Pre-Payment Account maintained by SSNY.

100.    SSNY knew that Werner Deconstruction would reasonably rely upon the representations contained in the 13 emails that Desser sent, including but not limited to the emails that were sent on May 15, 2015 and May 21, 2015.

101.    SSNY's statements and omissions, which were made with reckless and careless disregard for their veracity, allowed SSNY to continue operating on the Project while it was in breach of Article 6 of the Contract.

102.    SSNY's statements and omissions, which were made with reckless and careless disregard for their truth, directly and proximately caused Werner Deconstruction to incur substantial monetary damages.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT SEVEN
## (Negligent Misrepresentation)
(As to Defendant SSNY)

103.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

104.    As set forth with particularity in paragraphs 88-92, Desser, on behalf of SSNY, sent thirteen (13) emails to Werner Deconstruction, which misrepresented the status of payments made by SSNY for the removal of debris from the Project.  Werner Deconstruction relied on the misrepresentations in the thirteen (13) emails to advance funds to the Pre-Payment Account maintained by SSNY.

105.    SSNY owed Werner Deconstruction a duty to accurately report the status of payments made by SSNY for the removal of debris from the Project.

106.    SSNY breached the aforesaid duty.

107.    As a direct, proximate and foreseeable result of the breach of the aforesaid duty, Werner Deconstruction has been, and continues to be, damaged.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc. for compensatory damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT EIGHT
### (Conversion)
(As to Defendants SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10)

108.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

109.    Werner Deconstruction pre-paid SSNY $2,414,904.96 for the removal of debris from the Project.

110.    SSNY has exercised total domination and control over the pre-payments made by Werner Deconstruction for the removal of debris from the Project and has failed to pay Minerva Enterprises $240,704.97 for debris that was removed from the Project as of May 21, 2015.

111.    Upon information and belief, T.A. Garbett is the President of SSNY and, therefore, is responsible for every aspect of SSNY's operations.

112.    Upon information and belief, T.A. Garbett and John Does 1-10 aided and abetted SSNY in its unlawful conversion of the pre-payments made by Werner Deconstruction. By email dated May 27, 2015, Desser informed Werner Deconstruction that T.A. Garbett "handles the bank, payments, wires in and out, negotiations with Minerva etc…"

113.    On August 10, 2015, Werner Deconstruction demanded, among other things, that SSNY and T.A. Garbett pay the $240,704.97 that was owed to Minerva Enterprises, which

SSNY had illegally and fraudulently obtained from Werner Deconstruction.  Despite that, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10 caused SSNY not to pay Minerva Enterprises or return that money to Werner Deconstruction.

114.    Further, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10, upon information and belief, caused SSNY not to pay the $19,008.00 that was owed to Ani & Joe Abatement, which SSNY illegally and fraudulently obtained from Werner Deconstruction.

115.    SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10 had (and have) no basis or justification for failing to pay Minerva Enterprises or to return the $240,704.97 that SSNY illegally and fraudulently obtained from Werner Deconstruction.  SSNY's, T.A. Garbett's, John Does 1-10's, and XYZ Companies 1-10's refusal to pay Minerva Enterprises or to return that money to Werner Deconstruction was wrongful.

116.    Werner Deconstruction has suffered damages due to SSNY's conversion of $259,712.97, consisting of amounts that Werner Deconstruction pre-paid directly to SSNY for the removal of the Demolition Debris Pile from the Project and for asbestos abatement services at the Project.

117.    Werner Deconstruction has suffered damages due to T.A. Garbett's, John Does 1-10's, and XYZ Companies 1-10 actions in aiding and abetting SSNY's conversion of $259,712.97, consisting of amounts that Werner Deconstruction pre-paid directly to SSNY for the removal of the Demolition Debris Pile from the Project and for asbestos abatement services at the Project.

118.    The actions of SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10 in engaging in the conversion of the pre-payments made by Werner Deconstruction were willful,

wanton, outrageous and shocking to the conscience and provide the basis for an award of punitive damages against SSNY, Garbett, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Siteworks Services NY, Inc., Thomas A. Garbett, John Does 1-10, and XYZ Companies 1-10 for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## <u>COUNT NINE</u>
### (<u>New Jersey Consumer Fraud Act</u>)
(As to Defendants SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10)

119.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

120.    SSNY is a sitework contractor that offers its services to the public through out the New York and New Jersey area.  Werner Deconstruction retained SSNY to provide those services to remove the Demolition Debris Pile from the Project.

121.    The services that SSNY provided to Werner Deconstruction on the Project constitute "merchandise" as that term is defined by the New Jersey Consumer Fraud Act.  <u>See</u> <u>N.J.S.A.</u> 56:8-1.

122.    The actions of SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10, including but not limited to the actions set forth with particularity in paragraphs 88-92 and 109-117, constitute deceptions, frauds, unconscionable commercial practices and misrepresentations in violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, <u>et.</u> <u>seq.</u>

123.    The aforesaid actions of SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10 were unconscionable, deliberate, and knowing.

124.    Werner Deconstruction has suffered an ascertainable loss as a result of the actions taken by SSNY, T.A. Garbett, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendant Siteworks Services NY, Inc., Thomas A. Garbett, John Does 1-10, and XYZ Companies 1-10 awarding compensatory damages, together with pre-judgment interest, treble damages for all damages flowing directly and indirectly from Werner Deconstruction's violations, costs of suit, counsel feels and such other relief as the Court deems just and proper.

### COUNT TEN
### (Veil Piercing Claim)
(As to T.A. Garbett, T.K. Garbett, SSNY, SS Corp., SSNJ,
John Does 1-10, and XYZ Companies 1-10)

125.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

126.    Defendants T.A. Garbett, T.K. Garbett and John Does 1-10, the owners, interest holders, and/or officers of SS Corp, SSNY, and SSNJ acting in concert, have through manipulation of SS Corp, SSNY, SSNJ, and XYZ Companies 1-10, stripped these entities of their assets and absconded with money that had been wired to the Pre-Payment Account by Werner Deconstruction in accordance with the Debris Removal Agreement.

**A.  Defendants T.A. Garbett and T.K. Garbett Strip SSNY of Its Assets.**

127.    On September 12, 2012, T.K. Garbett completed a "New Business Account" form with T.D. Bank, N.A. and opened Account No. XXXXX8340 (i.e., the Prepayment Account). The New Business Account form identified "Siteworks Services Corp." as the account holder with an address at 192 Strawtown Road, New City, New York.

128.    On July 11, 2013, T.K. Garbett completed a "New Business Account" form with T.D. Bank, N.A. and opened Account No. XXXXX3942. The New Business Account form identified "Siteworks Services Corp." as the account holder with an address at 192 Strawtown Road, New City, New York.

129.    On September 5, 2014, T.A. Garbett completed a "New Business Account" form with T.D. Bank, N.A. and opened Account No. XXXXX9651. The New Business Account form identified "Siteworks Services Corp." as the account holder with an address at 192 Strawtown Road, New City, New York.

130.    On September 5, 2014, T.A. Garbett completed a "New Business Account" form with T.D. Bank, N.A. and opened Account No. XXXXX9718. The New Business Account form identified "Siteworks Services NY Corp." as the account holder with an address at 192 Strawtown Road, New City, New York.

131.    On March 6, 2015, T.A. Garbett and T.K. Garbett completed a "New Business Account" form with T.D. Bank, N.A. and opened Account No. XXXXX2561. The New Business Account form identified "Siteworks Services NY Corp." as the account holder with an address at 192 Strawtown Road, New City, New York.

132.    Upon information and belief, T.K. Garbett was an officer and/or shareholder of SSNY.  On March 6, 2015, T.A. Garbett and T.K. Garbett completed a "General Business Resolution" form with T.D. Bank NA which identified both of them as "officers, employees, members or agents" of SSNY with signature authority to withdraw funds from SSNY's accounts and to write checks. Further, the address that was reported on each "New Business Account" form for the Prepayment Account and Account Nos. XXXXX3942, XXXXX9651,

XXXXX9718, and XXXXX2561 was Defendant T.K. Garbett's residence at 192 Strawtown Road, New City, New York.

133.    T.A. Garbett and T.K. Garbett regularly funneled funds back and forth between the Pre-Payment Account and Account Nos. XXXXX8340, XXXXX3942, XXXXX9651, XXXXX9718, and XXXXX2561 without any regard to the corporate forms of SS Corp. and SSNY.

134.    Between February 6, 2015 and May 26, 2015, Werner Deconstruction entrusted SSNY with $2,414,904.96 via wire transfer into the Pre-Payment Account that had been designated by SSNY in accordance with the Debris Removal Services Agreement. Unbeknownst to Werner Deconstruction, the Pre-Payment Account had been opened in the name of "Siteworks Services Corp." by T.K. Garbett.

135.    Among other things, SSNY failed to pay Minerva Enterprises $240,704.97 and failed to pay Ani & Joe Abatement $19,008.00. SSNY failed to pay Minerva Enterprises and Ani & Joe Abatement even though Werner Deconstruction had entrusted SSNY with $2,414,904.96 to be used solely for the removal of the Demolition Debris Pile and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 had a collective balance of $849,931.01 as of February 6, 2015.

136.    Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 misused SSNY and SS Corp. to accomplish unlawful purposes, including, without limitation, stripping them of their assets and absconding with Werner Deconstruction's money.

137.    Before Werner Deconstruction made its first wire transfer to the Pre-Payment Account on February 6, 2015, that account had a balance of $7,081.95.

138.    Account Nos. XXXXXX3942, XXXXXX9651, and XXXXX9718 had a collective balance of $849,931.01 as of February 6, 2015.

139.    Between February 6, 2015 and June 30, 2015, Defendant T.A. Garbett advanced his own personal interests by withdrawing $1,331,404.00 in cash from the Pre-Payment Account.

140.    Statements from T.D. Bank N.A. reveal a myriad of transactions from the Pre-Payment Account that had no legitimate connection to the removal of Demolition Debris Pile from the Werner Generating Station.  Examples of improper transactions from the Pre-Payment Account where Defendant T.A. Garbett advanced his own personal interests include but are not limited to:

- A debit card purchase at PC Richard & Son on February 9, 2015 in the amount of $2,642.86;

- A debit card purchase for "City of Newark Tax" on February 23, 2015 in the amount of $1,509.18;

- A debit card purchase from the "New York State DMV" on April 28, 2015 in the amount of $4,871.25;

- A debit card purchase from "WPY Affinity Health Plan" on May 4, 2015 in the amount of $1,213.56; and

- Miscellaneous debit card purchases between February 2015 and June 2015 at "Lowes," "The River Palm Terrace," "The Rhodes North Tavern," "Advance Auto Parts," "The Orange Top Diner," "Massage Envy," "Auto Zone," "McDonalds," "Dunkin Donuts," "Apple Store," "Warwick Car Wash," "Somerset Tire Service," "Restaurant Depot," "The Home Depot."

141.    T.A. Garbett also transferred large sums of money from the Pre-Payment Account to other bank accounts maintained by SSNY and SS Corp. at TD Bank and then withdrew those funds for his personal use. In addition to the $1.3 million in cash that was withdrawn from the Pre-Payment Account, Defendant T.A. Garbett advanced his personal interests by withdrawing

approximately $1.8 million in cash from Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 between February 2015 and August 2015.

142.    By way of example, on February 6, 2015 and February 13, 2015, Werner Deconstruction wired $100,000.00 and $314,904.96 to the Pre-Payment Account. On February 6, 2015 and February 13, 2015, Defendant T.A. Garbett upon information and belief, transferred $100,000.00 and $110,000.00 from the Pre-Payment Account to Account No. XXXXX9718.  On February 13, 2015 and February 17, 2015, Defendant T.A. Garbett advanced his personal interests by withdrawing $200,000.00 in cash from Account No. XXXXX9718.

143.    Statements from T.D. Bank N.A. for Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718 reveal a myriad of transactions that had no legitimate business purpose.  Examples of improper transactions which advanced the personal interests of Defendant T.A. Garbett include but are not limited to:

- A check written on February 11, 2015 in the amount of $9,995.68 made payable to "NYS Child Support Processing Center"

- A debit levy of $57,145 on July 21, 2015 for child support;

- A debit levy of $26,065.70 on October 16, 2015 for child support;

- A debit of $1,069.22 on February 9, 2016 for a "O&R Utilities Bill Pymt;"

- A debit of $3,832.31 for "City of Newark Tax;"

- A check written on March 5, 2015 in the amount of $59,708.00 made payable to "Biditup Auctions Worldwide;" and

- Miscellaneous debits for "BJs," "Target," "Key West Marina," "Tuxedo Wine," "Tuxedo Motel," "Fairway Market," "Lifetime Fitness," "Liberty Science Center," "Kiddie Korner," and "Massage Envy," "Rhodes North Tavern," "Blackman Plumbing," "Life Time Fitness," "Overstock.com."

144.     Between February 7, 2015 and June 4, 2015, Defendant T.K Garbett advanced his own personal interests by withdrawing $13,463.00 in cash from the Pre-Payment Account and $500.00 in cash from Account No. XXXXX3942.

145.     Further, Defendant T.K. Garbett had an American Express card, which he used for personal expenses.

146.     Statements from American Express reveal a myriad of improper transactions which had no proper business purpose. Examples include charges to "Characters Bar" in Sloatsburg NY, the "Mountain Top Inn" in Chittenden, Vermont, "Hilltop Wines & Liquor" in New City, NY, "Mercedes-Benz" of Nannanuet NY, "Wendy's," "Big Daddy's," "Woodstock Inn & Resort", "Dunkin Donuts", "Burger King," "Shoprite Liquors," "TGI Fridays," the "Clarksville Inn," the "Saloon LLC," "Dicks Sporting Goods," Liquid Art Coffee House" in Killington, Vermont,  and "A Matter of Health."

147.     Statements from T.D. Bank report "Amex e-payments" of $13,394.00, $21,260.88, and $7,483.83 on February 11, 2015, February 26, 2015, and March 24, 2015 from Account No. XXXXX3942 and an "ACH DEBIT, AMEX EPAYMENT" in the amount of $94,808.72 from Account No. XXXXX2561 on May 26, 2015.

148.     Through the aforesaid actions, Defendants T.A. Garbett and T.K. Garbett absconded with Werner Deconstruction's money by siphoning funds from SSNY and SS Corp, stripping it of its assets, and rendering them judgment proof.  Statements from T.D. Bank, N.A. reveal that by June 30, 2016 SSNY and SS Corp. only maintained $2.81 in the Pre-Payment Account and Account Numbers XXXXXX3942, XXXXXX9651, and XXXXX9718.

**B.    Defendants T.A. Garbett and T.K. Garbett Strip SSNJ of Its Assets.**

149.    On February 13, 2015, T.A. Garbett completed a "Business Account Application" with Wells Fargo Bank, N.A. and opened a "Business Market Rate Savings" account (Account No. XXXXX3896) and a "Gold Business Services Package" account (Account No. XXXXX8927). The Business Account Application form identified "Sitework Services NJ Inc." as the account holder with an address of 3 Eberling Drive, New City, New York.

150.    Account Nos. XXXXX3896 and XXXXX8927 were funded with money from SSNY.

151.    For instance, on February 13, 2015, T.A. Garbett withdrew $200,000.00 from the Pre-Payment Account and had T.D. Bank, N.A. issue a cashiers check in the amount of $200,000.00 made payable to "Siteworks Services." Later that day, T.A. Garbett deposited the cashiers check in Account No. XXXXX8927, which had been opened in the name of "Siteworks Services NJ, Inc."

152.    Between May 4, 2015 and May 25, 2018, T.A. Garbett deposited 28 additional checks totaling $116,178.00 which had been made payable to "Siteworks Services NY, Inc." into Account No. XXXXX8927, which had been opened in the name of "Siteworks Services NJ, Inc."

153.    On March 20, 2015, T.A. Garbett withdrew $200,000.00 from Account No. XXXXX9651 and had T.D. Bank, N.A. issue a cashiers check in the amount of $100,000.00, which was made payable to "Siteworks Services."  On March 26, 2015, T.A. Garbett deposited the Cashiers check in Account No. XXXXX3896, which had been opened in the name of "Siteworks Services NJ, Inc."

154.    Between March 13, 2015 and June 4, 2018, T.A. Garbett deposited 15 additional checks totaling $115,514.52 which had been made payable to "Siteworks Services NY, Inc." into Account No. XXXXX3896, which had been opened in the name of "Siteworks Services NJ, Inc."

155.    Upon information and belief, Defendants T.A. Garbett, T.K. Garbett and John Does 1-10 stripped SSNJ of its assets rendering it judgment proof.

156.    Statements from Wells Fargo contain a series of recurring transfers to Account No. XXXXX8927 and numerous cash and ATM withdrawals that were made from Account No. XXXXX3896.

157.    As of August 31, 2018, Account No. XXXXX3896 had a balance of $7,776.70,

158.    As of August 31, 2018, Account No. XXXXX8927 had a balance of $1,278.56.

159.    Statements from Wells Fargo reveal a myriad of transactions from Account No. XXXXX8927 that had no legitimate business purpose.  Examples of improper transactions from the Account No. XXXXX8927 include but are not limited to numerous debit and purchase transactions for "Paragon Tap & Tab", the "Orange Top Din," the "Rhodes North Tav," "Bagel Boys," "Dunkin Donuts," "Apple Itunes," the "Lobster House" in Key West Florida, the "Hyatt" in Key West Florida, "Murray Marine" in Key West Florida, "Roots Ski & Board" in Killington, Vermont as well as checks made payable to "NYS Child Support Processing Ctr."

160.    Between February 2, 2016 and December 28, 2017, T.A. Garbett withdrew $127,874.05 in cash from Account No. XXXXX8927.

161.    Statements from Wells Fargo reveal that between April 9, 2015 and June 29, 2016 payments totaling $192,129.56 were made to Defendant T.K. Garbett's American Express Card.

162.    Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 failed to observe the corporate forms of SSNY, SS Corp., SSNJ and XYZ Companies 1-10 as regular and distinct entities, failed to observe corporate formalities, commingled and transferred funds of the companies, and failed to hold the companies out as separate entities in terms of their business operations from their own personal interests.

163.    The aforesaid actions of Defendants T.A. Garbett, T.K. Garbett, John Does 1-10 in misusing SSNY, SS Corp., SSNJ, and XYZ Companies 1-10 were not for legitimate business purposes but so that SSNY, SS Corp., SSNJ, and XYZ Companies 1-10 SSNY could be used as a mere agents or instrumentalities of Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10.

164.    As a result of the Defendants' misconduct, the corporate veils of SSNY, SS Corp. SSNJ, and XYZ Companies 1-10 should be pierced and Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 should be held jointly and severally liable for the funds that were absconded from Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and jointly and severally against the Defendants Siteworks Services NY, Inc., Siteworks Services Corp., Siteworks Services NJ, Inc. Thomas A. Garbett and Thomas K. Garbett for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT ELEVEN
### (Conversion)
(As to Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10)

165.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

166.    Between February 6, 2015 and May 26, 2015, Werner Deconstruction provided SSNY with $2,414,904.96 via wire transfer into the Pre-Payment Account that had been designated by SSNY.  Pursuant to Article 6 of the Debris Removal Contract, SSNY agreed that the funds wired by Werner Deconstruction were to be used solely to remove the Demolition Debris Pile at the Werner Generating Station as aforesaid.

167.    As set forth with particularity in paragraphs 126 - 164 herein, Defendants T.A. Garbett and T.K. Garbett absconded with Werner Deconstruction's money.

168.    Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 aided and abetted Defendants T.A. Garbett and T.K. Garbett in absconding with Werner Deconstruction's money.

169.    On February 20, 2015, just two weeks after Werner Deconstruction made its first wire of $100,000.00 into the Pre-Payment Account, Defendant Y. Garbett entered into a contract with Alex and Lucas Widney ("Mr. & Mrs. Widney") of Waretown, New Jersey to purchase real property located at 34 Mountain Spring Road, Chittenden, Vermont 05737 for $250,000.00 (hereinafter the "Chittenden Vermont Purchase").

170.    The material terms of the Chittenden Vermont Purchase were that Defendants Y. Garbett and R. Harle would provide a $50,000.00 deposit and take a first mortgage of $200,000.00 from Mr. & Mrs. Widney at an interest rate of 4% amortized over 30 years with a balloon payment of $195,613.80 due eighteen (18) months after closing.

171.    On April 22, 2015, Defendants Y. Garbett and R. Harle each executed a Power of Attorney authorizing Daniel Ewald, Esq. ("Ewald"), an attorney at law in Killington, Vermont to close the Chittenden Vermont Purchase.

172.    On April 22, 2015, $55,000.00 was transferred via wire from the Pre-Payment Account to Ewald.

173.    The funds that were transferred to Ewald belonged to Werner Deconstruction.

174.    An April 2015 bank statement from T.D. Bank, N.A. reveals that the Pre-Payment Account had a beginning balance of $20,748.71 on April 1, 2015, that Werner Deconstruction made wire transfers of $950,000.00 into the Pre-Payment Account in April 2015, and that cash deposits of $24,399.11 were made into the Pre-Payment Account in April 2015.

175.    On April 23, 2015, Ewald, as attorney in fact for Defendants Y. Garbett and R. Harle, closed the Chittenden Vermont Purchase with the $55,000.00 that had been wired on April 22, 2015.

176.    To complete the transaction, Ewald, as attorney in fact for Defendants Y. Garbett and R. Harle, executed a $200,000.00 promissory note in favor of Mr. & Mrs. Widney requiring Y. Garbett and R. Harle to make monthly principal and interest payments of $954.83 "beginning May 17, 2015 and continuing each and every month thereafter for 18 months (October 17, 2016), at which time a [sic] the entire principal plus any accrued interest shall immediately become due and payable in full."  The note was secured with a first mortgage on the property known as 34 Mountain Spring Road, Chittenden, Vermont.

177.    Since the closing of the Chittenden Vermont Purchase, Defendants Y. Garbett and R. Harle have, upon information and belief, made monthly mortgage payments of $954.83 to Mr. & Mrs. Widney at their address in Waretown, New Jersey.

178.    By and through their actions, including specifically, but without limitation, the acts alleged herein in paragraphs 166-177 and in other particulars subject to further investigation

C:\Users\JLinares\Documents\Werner Deconstruction LLC\Werner v. SSNY - Second Amended Complaint_FOR FILING.DOC

and discovery, Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 converted Werner Deconstruction's money.

179.    The actions of Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 in engaging in the conversion of Werner Deconstruction's money were willful, wanton, outrageous and shocking to the conscience and provide the basis for an award of punitive damages against Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Yvonne Garbett, Richard Harle, John Does 1-10, and XYZ Companies 1-10 for compensatory damages, punitive damages, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT TWELVE
### (Unjust Enrichment)
(As to Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10)

180.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

181.    As set forth with particularity in paragraphs 166-177 herein, Defendants Y. Garbett, R. Harle, John Does 1-10, and aided and abetted T.A. Garbett and T.K. Garbett in absconding with Werner Deconstruction's money.

182.    Defendants Y. Garbett and R. Harle obtained a benefit to the detriment of Werner Deconstruction, and retention of that benefit by Y. Garbett and R. Harle would be unjust.

183.    Among other things, Defendants Y. Garbett and R. Harle received $55,000.00 of Werner Deconstruction's money and used those funds to close the Chittenden Vermont Purchase.

184.    By and through their actions, including specifically, but without limitation, the acts alleged in paragraphs 166-177 and in other particulars subject to further investigation and discovery, Defendants Y. Garbett, R. Harle, John Does 1-10, and XYZ Companies 1-10 have been unjustly enriched to the detriment of Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against the Defendants Yvonne Garbett, Richard Harle, John Does 1-10, and XYZ Companies 1-10 for an Order for disgorgement of funds belonging to Werner Deconstruction, LLC, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT THIRTEEN
### (Claim for Successor Liability)

185.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

186.    The aforementioned actions of Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 establish that, through their express actions and through their implied conduct, SSNJ and XYZ Companies 1-10 agreed to assume the debts and obligations of SSNY including the debt owed to Werner Deconstruction.

187.    Accordingly, SSNJ, and XYZ Companies 1-10 should be held liable for SSNY's obligations owed to Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and jointly and severally against the Defendants Siteworks Services NY, Inc.,

Siteworks Services NJ, Inc., and XYZ Companies 1-10, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

### COUNT FOURTEEN
### (Alter Ego Liability)

186.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

187.    The owners, interest holders, members and/or offices of SS Corp., SSNY, SSNJ, and XYZ Companies 1-10 did not observe the corporate forms of those entities, did not hold regular or special shareholder and/or board of directors meetings for the companies, commingled and transferred funds from each company in a number of bank accounts, and made no effort to hold the companies out as separate entities in terms of their business operations.

188.    By way of example, between February 5, 2015 and May 19, 2015, T.A. Garbett caused eleven wire transfers from the Prepayment Account (which had been opened in the name of "Siteworks Services Corp.") totaling $940,000 and seven wire transfers from Account No. XXXXXX9718 (which had been opened in the name of "Siteworks Services NY, Inc.") totaling $280,000 to be sent to Minerva Enterprises as payment for accepting debris that had been removed from the Project pursuant to the Debris Removal Services Agreement.

189.    On February 13, 2015, T.A. Garbett withdrew $200,000.00 from the Pre-Payment Account and had T.D. Bank, N.A. issue a cashiers check in the amount of $200,000.00 made payable to "Siteworks Services." Later that day, T.A. Garbett deposited the Cashier's check in Account No. XXXXX8927, which had been opened in the name of "Siteworks Services NJ, Inc."

190.    Between May 4, 2015 and May 25, 2018, T.A. Garbett deposited 28 additional checks totaling $116,178.00 which had been made payable to "Siteworks Services NY, Inc." into

35

Account No. XXXXX8927, which had been opened in the name of "Siteworks Services NJ, Inc."

191.    On March 20, 2015, T.A. Garbett withdrew $200,000.00 from Account No. XXXXX9651 and had T.D. Bank, N.A. issue a cashiers check in the amount of $100,000.00, which was made payable to "Siteworks Services."  On March 26, 2015, T.A. Garbett deposited the Cashiers check in Account No. XXXXX3896, which had been opened in the name of "Siteworks Services NJ, Inc."

192.    Between March 13, 2015 and June 4, 2018, T.A. Garbett deposited 15 additional checks totaling $115,514.52 which had been made payable to "Siteworks Services NY, Inc." into Account No. XXXXX3896.

193.    For all intents and purposes, SS Corp., SSNY and SSNJ are the same.

194.    Accordingly, SS Corp., SSNJ, and XYZ Companies 1-10 should be held liable for SSNY's obligations owed to Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and jointly and severally against the Defendants Siteworks Services NY, Inc., Siteworks Services Corp., Siteworks Services NJ, Inc., and XYZ Companies 1-10, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT FIFTEEN
### (Breach of Fiduciary Duty)

195.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

196.    Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 were owners, interest holders, members and/or officers of SS Corp., SSNY, SSNJ and XYZ Companies 1-10 during all relevant times.

197.    SS Corp., SSNY, SSNJ and XYZ Companies 1-10 were insolvent during all relevant times.

198.    As owners, interest holders, members and/or officers of SS Corp., SSNY, SSNJ and XYZ Companies 1-10, T.A. Garbett, T.K. Garbett and John Does 1-10 had a duty to act in the interests of SS Corp., SSNY, SSNJ and XYZ Companies 1-10 and their creditors and had a special duty not to prefer themselves.

199.    As owners, interest holders, members and/or officers of SS Corp., SSNY, SSNJ and XYZ Companies 1-10, T.A. Garbett, T.K. Garbett and John Does 1-10 are jointly and severally liable for the distribution of assets of SSNY to themselves or entities that they control without failing to adequately provide for all known liabilities of SSNY.

200.    Based on the allegations as set forth herein, Defendants T.A. Garbett, T.K. Garbett, and John Does 1-10 breached their fiduciary duties by withholding and diverting for their own benefit the assets of SSNY that should have been used to pay the company's legitimate debts, including the debt of Werner Deconstruction.

201.    Werner Deconstruction has been damaged.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and jointly and severally against Thomas A. Garbett, Thomas K. Garbett, Siteworks Services Corp., Siteworks Services NY, Inc., Siteworks Services NJ, Inc., John Does 1-10, and XYZ Companies 1-10, together with pre-judgment interest, costs of suit, counsel fees and such other relief as the Court deems just and proper.

## COUNT SIXTEEN
### (Accounting and Turnover of Escrow Funds)
<u>(As to Y. Garbett – Escrow Agent)</u>

202.    Werner Deconstruction repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth at length herein.

203.    On October 25, 2018, BTU Environmental Services, LLC ("BTU") assigned to Werner Deconstruction all of BTU's right, title, and interest to all claims BTU has against Yvonne Garbett, Esq., who served as Escrow Agent in accordance with a contract dated January 30, 2014 between BTU and SSNY.

204.    On January 30, 2014, BTU and SSNY entered into a contract (the "BTU/SSNY Contract") wherein SSNY agreed to demolish a building containing Units 1, 2, and 3 at the Werner Generating station in South Amboy, New Jersey. To compensate SSNY for the services that it performed BTU and SSNY agreed that SSNY would receive the revenue from the sale of the first $3.5 million worth of scrap material removed from the Project. Specifically, SSNY and BTU agreed that "ferrous shall be credited at a price of $325 per metric ton" and that "the non-ferrous will be credited at the price sold to the scrap dealer."

205.    Between March 29, 2014 and March 20, 2015, SSNY removed scrap material from the Project and sold that material for its scrap value pursuant to the BTU/SSNY Contract.

206.    To ensure that SSNY performed all of its contractual obligations, the BTU/SSNY Contract required "a $525,000 hold back of revenues from the sale of scrap to be billed at the completion and acceptance of the work." SSNY and BTU agreed that "[t]his 15% hold-back shall be credited and held in escrow from the monthly scrap revenue generated on the project from the BTU Project Expense Reports until said hold-back/escrow funds reach a maximum of $525,000.00."

207.    The BTU/SSNY Contract designated Defendant Yvonne Garbett, Esq. as escrow agent for the hold back.

208.    Pursuant to the BTU/SSNY Contract, SSNY and BTU agreed that "[u]pon acceptance of the project, NRG will issue a certificate of completion to BTU. BTU will then submit a letter of completion and release of escrow to SSNY. Upon completion of the SOW and/or demobilization of the project and receipt of the release, the Escrow Agent shall be authorized to release said hold-back or escrow money to SSNY after 60 days have passed since demobilization and no cause of action has been filed challenging recovery of all or some of the hold back or escrow monies."

209.    SSNY was not entitled to a release of the escrow funds because it did not complete all of its work under the BTU/SSNY Contract.

210.    Further, BTU never submitted a letter of completion and release of escrow to SSNY.

211.    On January 7, 2015, Yvonne Garbett, Esq. cashed a check in the amount of $15,000.00 that was drawn from Account No. XXXXX3942.  The memo line of the check states "Escrow Act."

212.    Upon information and belief, Defendant Yvonne Garbett, Esq. received additional funds that were to be held in escrow pursuant to the BTU/SSNY Contract.

213.    The status of the escrow funds held by Defendant Yvonne Garbett is presently unknown to Werner Deconstruction and BTU.

214.    BTU has assigned its rights to the escrow account to Werner Deconstruction as aforesaid.

215.    Accordingly, Werner Deconstruction is entitled to an accounting of the escrow funds held by Defendant Yvonne Garbett and an Order directing the turnover of those funds to Werner Deconstruction.

WHEREFORE, the Plaintiff Werner Deconstruction, LLC demands that Judgment be entered in its favor and against Yvonne Garbett for an Order compelling an accounting of the funds held in escrow and directing that any such funds held in escrow be released to Werner Deconstruction, LLC together with costs of suit, counsel fees, and such other relief as the Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

Mandatory arbitration pursuant to Local Rule of Civil Procedure 201.1 is not appropriate in this case because the damages sought exceed $150,000.00.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to L. Civ. R. 11.2, I hereby certify that the within action is not the subject of any other action pending in any Court, or of any pending arbitration or administrative proceeding.

WALSH PIZZI O'REILLY FALANGA LLP
Attorneys for Plaintiff,
Werner Deconstruction, LLC


            /s/ Thomas J. O'Leary
            THOMAS J. O'LEARY

Date: December 7, 2018

40

C:\Users\JLinares\Documents\Werner Deconstruction LLC\Werner v. SSNY - Second Amended Complaint_FOR FILING.DOC