## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WERNER DECONSTRUCTION, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SITEWORK SERVICES NY, INC.; THOMAS A. GARBETT; YVONNE GARBETT a/k/a YVONNA HARLE; RICHARD HARLE; SITEWORKS SERVICES CORP.; SITEWORK SERVICES NJ, INC.; THOMAS K. GARBETT; JOHN DOES 1-10 and XYZ Companies 1-10 (fictitious defendants who participated in the diversion/conversion of funds owned by Werner Deconstruction, LLC),<br><br>*Defendants.* | Civil Action No.<br>3:15-cv-7682 (PGS)(TJB)<br><br>**MEMORANDUM AND ORDER DENYING SUMMARY JUDGMENT ON COUNTS ONE, TEN AND FOURTEEN**<br>**(ECF No. 143)** |

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment as to: (a) Count One of the Second Amended Complaint (Breach of Contract); (b) Count Ten of the Second Amended Complaint (Piercing of the Corporate Veil against SSNY, SSC, SSNJ, Thomas A. Garbett (T.A.G.), and Thomas K. Garbett (T.K.G.)); and (c) Count Fourteen of the Second Amended Complaint (Alter Ego Liability against SSNY, SSNJ, and SSC). ECF No. 143. This is a case where the parties cannot agree on the time of day. As such, there are numerous facts in dispute. Therefore, summary judgment is denied.

1

## I. Legal Standard

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), amended, 979 F.3d 192 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* "The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 255). Moreover, summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

"When the moving party [Werner Deconstruction] has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Wasserman v. Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (internal quotation marks omitted). Where the moving party bears the burden of proof, the evidence presented in support of summary judgment must be "credible" and

"entitle [Werner Deconstruction] to a directed verdict if not controverted at trial."

*Id*. at 237 (quoting *Celotex*, 477 U.S. at 331 (Brennan, J. dissenting)).  "Once a

moving party with the burden of proof makes such an affirmative showing, it is

entitled to summary judgment unless the non-moving party comes forward with

probative evidence that would demonstrate the existence of a triable issue of fact."

*Id*. at 238.

## II. Analysis

In Plaintiff's Statement of Material Facts ("PSMF") (ECF No. 143-2), it

alleges the litigation stems from the demolition of the Werner Generating Station

(Units 1, 2 and 3) in South Amboy, New Jersey.  (PSMF at ¶1). Outside of this

basic fact, nearly all of Plaintiff's facts are disputed or modified by Defendant

Sitework Services NY, Inc. (SSNY).  SSNY alleges additional work, change orders

and factual disputes require a trial by jury. To highlight that point, numerous

examples of disputes are numbered and set forth below.

A. *Background Pre-"Debris Removal Services Agreement"*

Fact Issue 1

Plaintiff claims in PSMF ¶¶ 1-10:

the project owner was NRG REMA LLC, formerly known as "GenOn
REMA LLC" ("NRG REMA").  In order to deconstruct the
generating station, on April 5, 2013, (a) NRG REMA contracted  with
Werner Deconstruction (the "Prime Contract"). (PSMF ¶3); (ECF No.
143-9 (Ex. 1)).  The Prime Contract: (1) "include[d] the abatement
and management of all Hazardous Materials in a safe and lawful

manner, demolition of [the generating station] as set forth herein, (2) salvage of materials and equipment, and (3) the disposal of any remaining non-salvageable materials . . . ."  (PSMF ¶4); *see also* (ECF No. 143-9 at 39 (Ex. 1)).

Werner Deconstruction was responsible for "project management" and served as the "owner's representative"; it performed no "engineering work, development of demolition, or environmental remediation plans."  (PSMF ¶7). On April 9, 2012, Werner Deconstruction subcontracted its obligations to BTU Solutions DE LLC ("BTU").  *Id.*

On the other hand, Defendant SSNY claims in Defendants' Statement of Facts (DSMF ¶¶ 1-10) (ECF No. 162):

the Prime Contract and the subcontract between Plaintiff and BTU Solutions DE, Inc or plaintiff's agreement with NRG REMA are irrelevant to this litigation. (Defendants' Statement of Facts (DSMF ¶¶ 1-10) (ECF No. 162).

On a motion for summary judgment, when there is an assertion that the contracts are irrelevant and probably subject to an evidence issue, the Court considers them to be in dispute for purposes of this motion.

Fact Issue 2

In PSMF ¶ 12, Plaintiff asserts:

12. In January 2014, BTU Solutions LLC entered into a General Services Agreement with SSNY to demolish the building housing Units 1. 2, and 3 at the Werner Generating Station.(Kemper Cert. ¶ 8: Ex. No. 3).

Defendant agrees in part, but counters with additional facts (DSMF ¶ 12).

12.  Defendants agree that SSNY entered into an agreement to demolish a building at the Werner

4

Generating Station. Additionally, Defendants state that Site Enterprises. Inc. was originally retained by BTU Solutions DE, Inc. to perform SSNY's tasks, Roffe Certification, Exhibit F, Tr. 39:2-40:15). Site Enterprises, Inc. "walked off the job" because they were not paid and successfully obtained a lien of $450,000 plus attorneys fees on the Project. (Roffe Certification, Exhibit C). Further, SSNY used the tracking pad Site Services. Inc. installed but added additional stone on top. (Roffe Certification. Exhibit F, Tr. 55:6-25).

Fact Issue 3

Plaintiff asserts in PSMF ¶¶ 13-14:

13. As part of that contract, SSNY and another BTU entity, BTU Environmental Services, LL,C entered into an agreement entitled "Statement of Work #01 " which incorporated the General Services Agreement by reference. (Kemper Cert.. ¶ 8: Ex. No. 4 ¶ I).

14. SSNY was BTU's demolition contractor for the Project. (Kemper Cert. ¶ 9).

Although Defendants agree with ¶ 13, it disputes ¶ 14 alleging

additional facts:

14. Defendants agree that SSNY was a demolition sub-contractor for a portion of the Werner Generating Station Project. Defendants do not agree that SSNY was the demolition contractor for the whole Project. Pursuant to the contract by and between SSNY and BTU Environmental, SSNY was to deconstruct one building (Roffe Certification, Exhibit D).

Fact Issue 4

Plaintiff contends that SSNY's responsibilities under the BTU contract were as follows:

> 18. Generally, SSNY agreed to perform all of the demolition work that BTU Solutions DE, LLC was responsible to perform under the Subcontract with Werner Deconstruction, with the exception of transporting and disposing asbestos containing material ("ACM") and construction and demolition debris ("C&D") offsite which SSNY had specifically excluded. (Kemper Cert. ¶9; Ex. No. 4 at Werner 00518 stating "All disposal of ACM and C&D to be performed by BTU or others").

Defendants contend the above statement is overbroad and in dispute:

> 18. Defendants disagree with the facts stated in Paragraph 18. Defendants state that SSNY was required to perform only the tasks specified on "Scope of Work #1." To the extent the task listed comport with the Scope of Work #1, Defendants agree with the facts stated.

Fact Issue 5

In PSMF ¶ 19, Plaintiff asserts that Paul Desser in his deposition described

the work to be performed by SSNY:

> A. Okay. – had created, okay, to tear the building down, wash the debris that was ferrous or non-ferrous metals on the tracking pad that had already been provided by BTU or by somebody because it was already there, power wash it, pass it out, process it and ship it out to a scrap yard or scrap yards to get the most money to equal the benefit of what Mr. Garbett was to get. The balance of anything above and beyond that was to go to either BTU or Werner.
>
> The debris from the structure demolition was to be taken away by BTU and disposed of. They were to remove all of the debris, load it in

> trucks, wrap it, do everything they needed. SSNY's job was to get the
> building down and create we'll call it the debris pile....

but Defendants allege that it is an incomplete statement and must be supplemented

with other testimony. SSNY notes:

> 19. Defendants state that the quotation in this Paragraph
> is accurate. Defendants further state that Desser further
> testified that SSNY's task under its agreement with BTU
> in full detail at Roffe Certification, Exhibit F, Tr. 56:17-
> 67:18.

## Fact Issue 6

In PSMF ¶ 21, Plaintiff alleges SSNY moved debris from the demolition

around the site, relying upon the deposition of Desser. In response, SSNY argues

that debris was moved, but this was caused by BTU's failure, rather than its own

actions.  Defendants assert (DSMF ¶ 21):

> 21.  Defendants agree with Paragraph 21 and further state
> that this was due to the failure of BTU to remove the
> debris.

## Fact Issue 7

Continuing on the same point, Plaintiff contends in PSMF ¶ 22 that SSNY

"moved debris around the site":

> 22. SSNY moved the debris around the site. (Kemper
> Cert. Ex. No. 5 at ¶ 3 ("As a part of the demolition
> process we have moved a substantial amount of the
> residual material from the demolition to the north end of
> the site and have indicated it may be needed for the
> platform when we are demolishing the northern most
> boiler."); Ex. No. 8 at Werner06404 ("We have already

moved the material more than one time to keep the operation going….")).

Defendants agree, but noted that this caused additional work for SSNY. (DSMF ¶ 22);

> 22. Defendants agree that SSNY moved the piles of debris around the work site, but not elsewhere. As a result, SSNY had to keep moving the piles. Roffe Certification, Exhibit F, Tr. 70:17-22.

Fact Issue 8

In PSMF ¶ 26, Plaintiff contends that "Thomas Barbett testified that SSNY initially contracted with BTU to demolish Units 1, 2 and 3".  Defendant agrees with this statement, but defendants contend it fails to recognize some proposed change orders (DSMF ¶ 26):

> 26. Defendants agree with Paragraph 26 as far as it goes but also states that, significantly, it was sent to Malcolm Carroll, Plaintiff's project manager, and that he requested to be "kept in the loop" to ensure that the change order described therein was "acceptable to" Plaintiff because the scrap which was to pay SSNY's fee for the Scope of Work was not enough to cover said work, as previously anticipated, and since Plaintiff "approved and signed off" on SSNY's contract with BTU Environmental, it needed to be kept informed. Lastly, Desser testified that when BTU Environmental failed to perform and defaulted Roffe Certification, Exhibit F. Tr. 95:17- 99:2 Plaintiff stepped into the shoes of BTU Environmental and performed its duties. Roffe Certification, Exhibit F, Tr. 99:9-100:9. 105:24.

Fact Issue 9

In PSMF ¶¶ 27-29, Plaintiff refers to an email from Desser to Carroll of Werner requesting additional compensation to SSNY. Carroll responded that Desser's recourse was with BTU.

Defendants agree with the above facts but assert that it is all subject to their response in DSMF 26 concerning Carroll's statement therein (see above). (DSMF ¶¶ 27-29).

Fact Issue 10

In PSMF ¶ 30, Plaintiff alleges that there was a letter proposal from SSNY to BTU wherein it proposes the amount of $509,000 to process 20,000 tons of debris for reuse in lieu of disposing of it off-site. Defendants agree that was part of a quotation, but the terms had other provisions. (DSMF ¶30):

> 30. Defendants agree that the letter states what it says as far as it goes, but the letter also states that "BTU/CAMS" was required to remove the 20,000 tons of debris and, since "BTU/CAMS" had not done so, SSNY would process the debris to reduce the amount of material that needed to be removed as contaminated by asbestos for $510,900.00, not "for reuse in lieu of disposing it off the site." Indeed, the letter broke down the specific procedure to be followed. Further, the letter states that the work set forth is outside SSNY's scope of work. (Certification of Nicolas Kemper dated November 12, 2021 (the "Kemper Certification") Exhibit 5). Further, Defendants state that the removal of the tracking pad was not placed into the Debris Removal Services Agreement. Roffe Certification, Exhibit H.

Fact Issue 11

In PSMF ¶ 31, Plaintiff alleges SSNY stated, in a November 17, 2014 letter, that "[t]he existing approved EPA work plan requires us to remove and dispose of all non-metal materials from the demolition of the Werner Generation Station as Asbestos Contaminated debris." (Kemper Ex. No. 5 at Werner 06512 ¶ 2). However, Defendants contend they fulfilled their contractual obligation by stockpiling the debris for removal once BTU/CAMS paid for its removal (DSMF ¶31):

> 31. Defendants agree with Paragraph 31 as far as it goes, but states that the letter also states that BTU/CAMS is required to pay for the removal, that SSNY was prepared and ready to load the debris, and that SSNY would fulfill its contractual obligations if it stockpiled the debris for removal when BTU/CAMS paid for its removal. Further, the next paragraph of the letter states, "As part of the demolition process, we have moved a substantial amount of the residual material from the demolition to the north end of the site …This has allowed the material to remain on site and not yet have BTU/CAMS incur the cost of transportation and disposal of this material…"

B.   *Breach of Post-"Debris Removal Services Agreement"*

(a)      Count One (Breach of Debris Removal Service Agreement (DRSA) Against SSNY)

This lawsuit centers on the Debris Removal Service Agreement (DRSA). Werner Deconstruction seeks partial summary judgment on a breach of contract claim against SSNY on four different grounds: (i) SSNY's failure to complete the

10

removal of debris on the site; (ii) the failure to pay sub-subcontractors and to indemnify Werner Deconstruction against construction liens filed by those sub-subcontractors; (iii) the failure to refund pre-payments that SSNY allegedly did not earn; and (iv) the failure to remove and remediate the contaminated tracking pad at the site.  (Second Amended Complaint (SAC) ¶¶29-65, ECF No. 69).  As in the first section, involving pre-DRSA events, the parties dispute the facts on each ground.

   *(i) SSNY's failure to complete the removal of debris on the site*

Fact Issue 12

   In PSMF ¶ 171, Plaintiff alleges SSNY abandoned the Project, leaving debris (including asbestos contaminated brick) and trash, scattered throughout the site in breach of SSNY's scope of work under the DRSA.  SSNY does not dispute debris remained on the site, but rather they deny abandonment of the project, and argue lack of contractual responsibility for the debris that remained on the site. (DSMF ¶ 171).

> 171. Defendants state that SSNY did not abandon the project, that they cleaned up the site where they were working. Desser Certification, Exhibit B, last 2 pages, Roffe Certification, Exhibit B Tr. 120:18-122:16. SSNY was not required to, nor did they, clean areas they were not assigned to work.

Fact Issue 13

In PSMF ¶ 33, Plaintiff states as a result of BTU's lack of financial capacity to transport and dispose of the asbestos contaminated debris offsite and complete the remainder of its work, plaintiff had to it had to provide financially for the disposal of the debris from the site.

SSNY does not dispute that plaintiff was placed in this position leading to the contract between plaintiff and SSNY but adds that under the DRSA Plaintiff was required to pay a *per load fee* for such additional removal. (emphasis added) (DSMF ¶ 33).

Obviously, the parties dispute the scope of the work set forth in the DRSA. Plaintiff submits the contract is inclusive of all debris on the site, while SSNY argues Exhibit B to the DRSA (outlining the price schedule and estimate to be 20,000 tons) created a "per load" agreement for which plaintiff paid defendants in advance, and SSNY cleaned the site of asbestos contaminated material and documented same to plaintiff. (ECF No. 151 at 5-6).

In part, plaintiffs rely on the following section of the DRSA (PSMF ¶ 39):

> In accordance with the terms and provisions of this Agreement, [SSNY] shall provide to Werner all services for the sole purpose of removal from the project site and disposal to an authorized ACM contaminated landfill of building debris and contaminated waste materials (**"Debris"** or **"Debris Pile"**) of the demolished power house at the Werner Generating Facility, located at 135 Main St., South Amboy[,] New Jersey, as described and

stated in Exhibit "A" which is attached hereto and made
a part hereof (the **"Work"**).  [SSNY] will adhere to and
comply with all Federal, State, Local, and OSHA laws,
regulations and requirements in the performance of the
Work.  [SSNY] has subcontracted or will subcontract
with Minerva Enterprises, LLC, a qualified disposal
landfill operator (**"Landfill Contractor"**) to supply
trucking, transport, and hauling and proper disposal of
the Debris and will generate and obtain all necessary and
appropriate documentation required in the performance
of the Work as records which shall be turned over to
Werner for submittal to the owner of the project site,
NRG REMA .The schedule for Contractor's performance
of the Work shall be as set forth in Exhibit C.

(*Id.* at 195 (Ex. 9)).  To the contrary, SSNY argues that Exhibits attached to the

DRSA limited its work (DSMF ¶ 33) (ECF No. 151 at 5-6).

Under a section with the heading "CONTRACTOR OBLIGATIONS," the

DRSA required SSNY to "perform the Work as set forth in Exhibit 'A' to

completion . . . ."  (*Id.*).  "Exhibit A" of the contract defined SSNY's "scope of

work":

Contractor shall provide all supervision, labor, materials,
equipment, maintenance, ACM handling, debris loading,
wetting, and wetting equipment, liners, weighing,
transportation, disposal, required documentation and
tracking, including EPA / NJDOL / NJDOH / OSHA,
interface and compliance necessary to complete removal
and proper disposal of the ACM Contaminated Building
Debris, associated structures, and materials which were
and are a product of the Open Air Demolition Plan Rev
10 approved by the EPA, NJDOH, and NJDOL for the
demolition of the power house located at the Werner
Generating Station (the **"Werner Facility"**), 135 Main

13

St., South Amboy, New Jersey.  This scope of services includes:

> . . . .

> 4.  Weigh out utilizing existing site sales, record, and provide shipping manifests and EPA required documentation for each load shipped and maintain records on site.

> . . . .

> 6.  Construct and maintain necessary components for handling the materials on site including tracking pad, wheel wash, etc., required for the loading and removal of materials.

> 7.  Supply all labor, materials, and equipment to install either "bladder bag liners" or "Burrito wrap" for each of the loads.

> 8.  Perform any additional activities, documentation, or filings, that may be required by the Federal, State, and Local[] governing agencies that have jurisdiction over or are involved with the performance of the Work, whether or not previously identified or mentioned, which are necessary to complete the Work.

(*Id.* at 201 (Ex. 9)).

Exhibit B to the Agreement is titled "Price Schedule" and reads as follows:

> Truck/Transport & Disposal: $112/ton
> On Site Material Handling: $6/ton
> Container Liner & Lining: $280/load

> Debris pile is estimated by Contractor at 12000 Cu. Yds. Or 20,000 tons.

Upon completion of setup Contractor expects to load out 20 trucks/day.

Above pricing is warranted by Contractor for the duration of the Work provided pursuant to this Agreement.

In addition, associated costs incurred by the Contractor to maintain the routing on NRG's side of the fence used by disposal trucks and containers for performance of the Work as necessary. (These costs are unknown at this time.)
For the purposes of this agreement Werner assumes these costs would include supervision, labor, equipment, and materials (loads of limestone aggregate) necessary to fill, spread, and grade the route to recover and maintain it to a usable state during material transport operations and to return it to its original state upon completion of the Work.

(*Id.* at 202 (Ex. 9)).

Fact Issue 14

In PSMF ¶¶ 169, Plaintiff states it noticed SSNY by letter "that the balance of the prepayment be utilized by SSNY in order to complete the work under the contract without delay, pursuant to the pricing warranted by SSNY as set forth in Exhibit 'B' in the Contract." SSNY disagrees with this statement, SSNY argues (DSMF ¶ 169):

169. Defendants state that the letter states what is quoted but is not factually accurate. Defendants state that SSNY completed the project, and did not abandon it, they requested a "close out" and the response was for another proposal to do the tasks set forth in the letter Roffe Certification, Exhibit B, Tr. 120:18-122:16

The material fact at issue is whether the contract was limited to a per-load agreement as argued by SSNY (to which it argues it completed its contractual obligations) or as plaintiff claims, whether the contract covered the remaining debris as part of SSNY's scope of work. This is a dispute of material fact.

> *(ii) the failure to pay sub-subcontractors and to indemnify Werner Deconstruction against construction liens filed by those sub-subcontractors;*

Plaintiff seeks indemnification to recoup the cost of its defense against the construction liens filed by Minerva and Ani & Joe, invoking its duty to defend based on paragraph 9 of the DRSA ("Indemnification").

Fact Issue 15

In PSMF ¶¶ 101, 187-8, Plaintiff claims SSNY did not pay Minerva Enterprises and as a result Minerva Enterprises filed a construction lien claim against the Project in the amount of $240,704.97 and Plaintiff incurred $10,566.22 in attorneys' fees to have Minerva Enterprises' construction lien claim discharged. In addition, in PSMF ¶¶ 189-90, Plaintiff states SSNY did not pay Ani & Joe Abatement Demolition, LLC and as a result Ani & Joe Abatement Demolition, LLC filed a construction lien claim against the Project in the amount of $19,008.00 and Plaintiff incurred $3,210.00 in attorneys' fees to have the construction lien claim discharged.

To the contrary, in DSMF ¶¶ 101, 188 and 189, SSNY disputes

responsibility for the liens:

> 101. Defendants deny the allegation contained in this Paragraph. Defendants state that Minerva was fully and completely paid, when back charges were factored in. Roffe Certification, Exhibit F, Tr. 211:18-212:24. Further, Defendants state that it is irrelevant as to whether Minerva was paid as the Debris Removal Services Agreement did not require Plaintiff to pay any contractors of SSNY, and the Debris Removal Services Agreement does not require such payment. Further, Defendants state that Plaintiff was fully aware of what SSNY paid all contractors since they received daily or weekly reports and all the tickets of transactions. Desser Certification, Exhibit 1, Roffe Certification Exhibit B 145:25-146:15, Exhibit F, 176:2-178:6. Additionally, Desser provided a spreadsheet. Exhibit B, Tr. 231:9-233:21

> 188. Defendants state that the lien was an invalid lien, as evidenced by the discharge, was part of the back charge dispute SSNY had with Ani and Joe Abatement Demolition, and if Plaintiff sought a discharge, it is its own liability. Indeed, when Desser asked for the lien, said he would take care of it, and was told that Plaintiff dealt with it. Additionally, Desser testified that Ani and Joe frequently sent invalid and false bills. Roffe Certification, Exhibit B, Tr. 40:21-44:4, Exhibit G Tr. 265:12-266:13, 268:9-25

> 189. Defendants state that the lien was an invalid lien, as evidenced by the discharge, and did not owe any sums to Ani and Joe Abatement Demolition, and if Plaintiff sought a discharge, it is its own liability. Defendants also incorporate its response to Paragraph 188 herein. Further, if Ani and Joe Abatement Demolition had a valid claim, they should have sued SSNY.

As such, SSNY does not dispute the liens were filed or the accuracy or

validity of the billing for the attorneys' fees by Werner, but rather disputes

responsibility generally for the liens. SSNY challenges: (a) validity of the liens as

Minerva was fully paid and Ani & Joe's lien was discharged; (b) they were denied the opportunity to assert a defense against the claims; and (c) it was not plaintiff's responsibility under the prime contract or DRSA to pay such liens. (DSMF 162 ¶ 188). As such this is another issue of material fact.

       *(iii) failure to refund pre-payments that SSNY allegedly did not earn;*

Fact Issue 16

The parties do not dispute Article 6 subparagraph 5 of the DRSA compels SSNY "[a]t the completion of the Work, Contractor shall refund any remaining funds in the Contractor's account by wire transfer back to Werner's account within two (2) business days." PSMF ¶ 43. However, the amount owed by SSNY is in dispute.

In PSMF ¶ 120, Plaintiff calculates the total amount owed by SSNY for overpayments to the Pre-Payment Account is $122,298.66 (i.e., $188,798.66 - $66,500.00). However, SSNY disputes this calculation. DSMF ¶ 120. SSNY asserts:

> 120. Defendants state that this calculation is inaccurate and again state that the calculations by both Plaintiff and SSNY in the spreadsheets prepared are accurate.

SSNY references a spreadsheet apparently prepared by Desser as proof of what Werner Deconstruction actually owed SSNY (Exhibit B, Tr. 231:9-233:21).

At his deposition, Desser testified that Werner Deconstruction's calculation of how much SSNY earned failed to account for costs that SSNY incurred while working on the project, such as keeping the site wet during a work shut down ordered by Werner Deconstruction. DSMF at ¶ 101; ECF No. 143-8, Tr. 14:18-16:15 (Ex. H). This is corroborated by the parties' contract, which contemplates that Werner Deconstruction would compensate SSNY for "associated costs incurred by [SSNY] to maintain the routing . . . used by disposal trucks" for an unspecified amount. ECF No. 143-9 at 202 (Ex. 9). At minimum, this creates a genuine question of material fact for the jury to decide.

*(iv) failure to remove and remediate the contaminated tracking pad*

Fact Issue 17

Plaintiff seeks damages for the cost of removing the contaminated tracking pad, alleging defendants were responsible for removal. The parties agree Exhibit A to the DRSA, obligates SSNY to "[c]onstruct and maintain necessary components for handling materials on site including tracking pad, wheel wash, etc., required for the loading and removal of materials." PSMF ¶ 152. Defendants argue that the cited language does not obligate them to remove the tracking pad. In PSMF ¶ 156, Plaintiff states SSNY did not remove the tracking pad. However, defendants dispute removal fell within their scope of work. DSMF ¶ 156.

156. Defendants state that SSNY did not remove the tracking pad and state they were not required to pursuant to the Debris Removal

Services Agreement. Indeed, it was specifically left out after being proposed by SSNY. Defendants incorporate their response to Paragraph 39 herein.

> (b)   Count Ten (Piercing of Corporate Veil against SSNY, SSC, SSNJ, Thomas A. Garbett (T.A.G.), and Thomas K. Garbett (T.K.G.))

By way of background[1], there are two elements required to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Hunt Constr. Grp. Inc. v. Farina*, No. 11-4933, 2012 WL 72286 (D.N.J. Jan. 10, 2012).

In support of its motion for summary judgment, Plaintiff argues:  T.A.G. and T.K.G. are both officers or directors of all the corporate entities;

Fact Issue 18

In PSMF ¶ 201, Plaintiff states T.A. Garbett and T.K. Garbett completed a "General Business Resolution" form with T.D. Bank, NA which identified both of them as "officers, employees, members or agents" of SSNY with signature authority to withdraw funds from SSNY's accounts and to write checks. PSMF ¶

---

[1] As an aside, the Court requires briefing and a conference on whether this claim should be treated separately from contract claim (DRSA), and whether it is an equitable remedy.

201; O'Leary Cert. Ex. F. Defendants do not deny similar ownership, but maintain

SSNY and SSC are separate entities. DSMF ¶ 201.

> 201. Defendants state that SSNY and Siteworks Service Corp. are
> separate entities that have similar ownership and there is no evidence
> to the contrary. They have separate accounts and operate separately.
> Defendants further state that, since Siteworks Services Corp. had no
> direct claims against it, and the claims against Defendants are not
> valid, it is irrelevant.

Fact Issue 19

In PSMF ¶ 203, Plaintiff states SSNY never had a meeting of its board of

directors or its shareholders. PSMF ¶ 203; Linares Cert. Ex. B at Tr. 21:3-21:13.

Similarly, in PSMF ¶ 238, plaintiffs allege SSNJ did not have meetings of its board

of directors or its shareholders. Defendants dispute the allegations as inaccurate or

false.  DSMF ¶¶ 203, 238:

> 203. Defendants state that SSNY held such meetings. Defendants
> further state that, since Siteworks Services Corp. had no direct claims
> against it, and the claims against Defendants are not valid, it is
> irrelevant.

> 238. Defendants do not challenge the facts stated in this Paragraph as
> far as it goes, but state that SSNJ had only one shareholder so such
> meetings were irrelevant. Defendants further state that since the claim
> against Defendants is not well founded, it is irrelevant.

Fact Issue 20

Plaintiff alleges defendants engaged in the following improper financial

practices including: (a) T.A.G. and T.K.G. stripped SSNY, SSC, and SSNJ of their

assets; (b) T.A.G. and T.K.G. made large withdrawals (totaling hundreds of thousands of dollars) from the bank accounts of these corporations; (c) T.A.G. and T.K.G. used funds from the bank accounts of SSNY, SSC, and SSNJ on personal expenses. (ECF No. 143-1 at 41-43). For example:

In PSMF ¶¶ 204-207, Plaintiff alleges defendant T.A. Garbett improperly enacted a series of cash withdrawals between February 6, 2015 and June 30, 2015, totaling $760,116.00 from the Pre-Payment Account leaving the accounts with low to zero balances. Similarly, between February 6, 2015 and June 30, 2015 plaintiff alleges defendant T.K. Garbett made improper cash withdrawals totaling $21,463. Defendants dispute the impropriety of the withdrawals. DSMF ¶¶ 205-207.

> 205. Defendants state that such funds were used to pay salaries and expenses pursuant to the Debris Removal Services Agreement, salaries and expenses for other jobs, and shareholder draws. The funds were properly drawn Certification of Saul Roffe, Esq. dated December 16, 2021 ("Roffe 2 Certification", Exhibit A, 103:23, 131:15-22., 109:7-111:12. Defendants further state that, since Siteworks Services Corp. had no direct claims against it, and the claims against Defendants are not valid, it is irrelevant.

> 207. Defendants state that such funds were used to pay salaries and expenses pursuant to the Debris Removal Services Agreement, salaries and expenses for other jobs, and shareholder draws. The funds were properly drawn Certification of Saul Roffe, Esq. dated December 16, 2021 ("Roffe 2 Certification", Exhibit A, 103:23, 131:15-22., 109:7-111:12. Defendants further state that, since Siteworks Services Corp. had no direct claims against it, and the claims against Defendants are not valid, it is irrelevant.

Fact Issue 21

In PSMF ¶¶ 208-209, Plaintiff alleges defendants conducted multiple improper transactions from the Pre-Payment account that did not have a legitimate connection to the removal of demolition debris from the site. Defendants dispute the impropriety of the transactions. DSMF ¶ 208:

> 208. Defendants state that the charges listed are both immaterial and explained by Garbett in deposition (("Roffe 2 Certification", Exhibit A, 103:23, 131:15-22., 109:7-111:12). Further, Plaintiff, beyond the bald statement, provided no evidence of their impropriety. Defendants further state that, since Siteworks Services Corp. had no direct claims against it, and the claims against Defendants are not valid, it is irrelevant.

Fact Issue 22

In PSMF ¶ 210, Plaintiff alleges defendant T.A. Garbett transferred sums totaling $560,000.00 from the Pre-Payment Account to other bank accounts maintained by SSNY and Siteworks Services Corp. at TD Bank. Defendants dispute the accuracy of this claim. DSMF ¶ 208.

> 210. Defendants state that if SSNY transferred the funds from the main bank account of SSNY to other accounts controlled by SSNY, the funds were not removed from SSNY. Thus, this claim is patently false by Plaintiff's own claims. Defendants further state that, since Siteworks Services Corp. had no direct claims against it, and the claims against Defendants are not valid, it is irrelevant.

Fact Issue 23

In PSMF ¶¶ 211-229, Plaintiff alleges defendants T.A. Garbett and T.K. Garbett made several more cash withdrawals from the pre-payment account

continually leaving the account with low to zero funds remaining. Defendants do not deny the withdrawals occurred, but do contend that explanations were given as to the reasoning of the withdrawals and maintain their legitimacy. DSFM ¶ 211-229.

> 211. Defendants state that Garbett did, in fact state, generally, what happened with the funds. Defendants further state that since the claims against Defendants are not valid, it is irrelevant.

    (c)    <u>Count Fourteen (Alter Ego Liability against SSNY, SSNJ, and SSC)</u>

In support of its motion for summary judgment, Werner Deconstruction points to several facts which could show how SSNY, SSNJ, and SSC were intermingled or used to perpetuate fraud:

(1)    the Pre-Payment Account was set up in the name of SSC and not SSNY, PSMF ¶ 42, which defendant does not dispute other than to note plaintiff did not always make prepayments. DSMF ¶ 42.

(2)    there were possibly several large transfers of money between the entities, *e.g.* PSMF ¶¶240-42; which defendant does not dispute. DSMF ¶¶240-42.

(3)    checks intended for SSNY were deposited into an account for SSNJ, PSMF ¶¶240-42; which defendant does not dispute. DSMF ¶¶240-42.

However, construing the facts should be left to the trier of fact. Arranging the Pre-Payment Account in the name of SSC (instead of contract party SSNY), does not conclusively constitute intermingling. PSMF ¶ 42. Whether SSNY and SSNJ used funds inappropriately (PSMF ¶239) or failed to hold meetings of their boards of directors, (PSMF ¶¶203, 238); is not irrefutable proof these corporate entities acted fraudulently. The "fraudulent intent" element of piercing the corporate veil is not a rigid test but rather considers several factors to determine if the corporation is more than a mere legal fiction. *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). This is a factual inquiry that is appropriate for the jury. Further, the alleged transfers of money between the companies do not decisively establish the fact the corporations were used by SSNY to perpetuate a fraud or injustice.

While T.A.G. was an owner or officer of all three entities, and T.A.G. and T.K.G. created the bank accounts of all three entities, (PSMF ¶¶191-203, 236-37), defendants maintain separate accounts and operate separately. DSMF ¶¶191. A trier of fact may need to rely on trial testimony to determine the credibility of the statements and to draw a conclusion on the question of alter ego liability.

<u>Conclusion</u>

In light of the enumerated disputes of material fact, summary judgment on Counts One, Ten and Fourteen is denied.

## <u>ORDER</u>

**THIS MATTER** having come before the Court on Plaintiff's Motion for

Partial Summary Judgment, (ECF No. 143); and the Court having carefully

reviewed and taken into consideration the submissions of the parties, as well as the

arguments and exhibits therein presented; and for good cause shown; and for all of

the foregoing reasons,

      **IT IS** on this 30th day of September, 2022,

      **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF

No. 143) is hereby:

      **DENIED** as to all claims under Count One, Count Ten, and Count Fourteen;


_____

PETER G. SHERIDAN, U.S.D.J.